Hortense **COTTER**, Plaintiff-Appellant,

v.

Richard Brice **McKINNEY**, Defendant-Appellee.

No. 13760.

United States Court of Appeals
Seventh Circuit.

Oct. 31, 1962.

448

Charles F. Short, Jr., Chicago, Ill., Donald E. Casey, Chicago, Ill., Brundage & Short, Chicago, Ill., of counsel, for appellant.

Karl M. Tippet, Chicago, Ill., John M. Moelmann, Richard G. French, Chicago, Ill., Hinshaw, Culbertson, Moelmann & Hoban, Chicago, Ill., of counsel, for appellee.

Before HASTINGS, Chief Judge, and SCHNACKENBERG and KILEY, Circuit Judges.

SCHNACKENBERG, Circuit Judge.

Hortense Cotter, plaintiff, has appealed from a judgment entered by the district court, on a jury verdict, finding Richard Brice McKinney, defendant, not guilty, in a suit brought by plaintiff for personal injuries alleged to have been caused by defendant's negligence in driving an automobile, which collided with a motor vehicle in which plaintiff was a passenger.

Below we summarize the evidence of the parties.

About noon on a June day, plaintiff was riding in an automobile driven by Mrs. Phyllis Kaiser, northerly on a public highway in Kane county Illinois, and, in order to turn left into a country club, when "about a block from the club", Mrs. Kaiser put on her directional lights, and, while driving slowly, looked to the north, saw no automobile coming and began to turn. When the turn was about halfway completed a car driven by defendant came over a hill crest about 100 yards to the north, at a speed of 65 miles per hour. A collision occurred. Plaintiff was thrown from Mrs. Kaiser's automobile and received 36 fractures, and various permanent injuries.

At the time of the trial defendant was serving abroad in the armed services of the United States.

Mrs. Kaiser heard defendant, immediately after the accident, admit to another person that he was exceeding the speed limit. Plaintiff had no recollection of the accident.

Jack Wilson, an adjuster for the Hartford Accident Indemnity Company, which insured Mrs. Kaiser's car, testified that defendant gave him a statement four days after the accident, in which defendant said he came over the hill at about 65 miles an hour and was aware of the club entrance, having traveled the road many times. He said there was a warning sign, and as he came over the crest he saw the car, with a blinker light on, making a left turn to go west into the club.

Casimir Bera, a witness for defendant, testified that, as he followed the Kaiser car in his own car for two or three miles, he observed that the occupants were talking quite a bit. He also stated that through the windows of the Kaiser vehicle before it started its turn, he saw the oncoming car of defendant.

It was stipulated that, prior to the institution of the instant suit, plaintiff's

claim against Mrs. Kaiser was settled for $9,000 on her covenant not to sue.[1]

1. When Wilson was called as a witness for plaintiff, he was examined by the court out of the presence of the jury. He stated that "at that time" he was an adjuster and "at this time" he was a field man; that he was employed by Hartford Accident and Indemnity Company, which insured Mrs. Kaiser. The following colloquy occurred:

"Mr. French (attorney for defendant): He is not my insurance adjuster.

"Mr. Short (attorney for plaintiff): I am being very careful not to bring out that he was an insurance adjuster.

"The Court: And I urge you, when you testify again, that you do not inadvertently disclose you were an insurance adjuster. I think you have been warned of that.

"Mr. French: Your Honor, I think I have a right to show this man's interest. I am certainly going to ask him by whom he was employed at the time of this occurrence, because he was adjusting this claim on behalf of Mrs. Kaiser who was the driver of the automobile. And he is here as an interested witness, and I certainly have a right to show his employment and in what capacity he was doing whatever he was going to testify to.

"Mr. Short: There is no interest this man could possibly have. *Hartford has no interest in this case.*

"The Court: What interest could he have in view of the fact, as I understand it, *the other case has been disposed of?*

"Mr. French: Your Honor, if this man—I don't know what he is to testify to. But let us assume that he is to testify that he had a conversation with the defendant. At the time he had the conversation with the defendant, this case had not been settled. He was there as an interested party representing a party to this accident. And I certainly have a right to show his interest—not that they may not have any interest today, but at the time the statement was made, they certainly had an interest.

"Mr. Short: You test the man's credibility as of today, not as of when it occurred.

"Mr. French: If he is testifying to something that occurred shortly after this occurrence, at the time they had an interest in this matter, I have a right to show that.

"Mr. Short: If he wants to bring this insurance question out on this floor, your Honor, this is a peculiar position. Here is the plaintiff objecting to the jury being informed about insurance in any manner.

"The Court: I am going to let you make inquiry to show interest. The witness is going to be permitted to testify. But I do not think that I would relax the bars until he turns—develops that.

"Mr. Short: I won't."

Wilson then testified *before* the jury on direct and cross-examination. On cross-examination defense counsel was permitted over objection to show that the witness was employed by the Hartford Accident Indemnity Company, when he took defendant's statement.

The court permitted this evidence "to show interest". Upon closing argument before the jury, the record shows:

"Mr. French: Is he interested in this case? Yes, he is. He is employed as an adjuster by the Hartford Insurance Company. He told you what an adjuster is. An adjuster investigates and attempts to adjust claims. At the time that he spoke to

1. At the time of the trial there was an agreement by counsel that plaintiff would make no attempt to recover from defendant or against his insurance company through the defendant in excess of the $25,000 coverage of the policy.

**450**

Mr. McKinney, he was speaking to him in his capacity as an adjuster for the Hartford Insurance Company who carried a policy of insurance covering the Kaiser vehicle. Is he interested? Naturally. He does not want to see Hartford have to pay money to Mrs. Cotter.

"Mr. Short: I am going to object to this, your Honor.

"The Court: The objection is overruled.

"Mr. French: So he talked to Mr. McKinney. I think that he was as honest as he possibly could be with regard to his recollection of the conversation.

    *    *    *    *    *

That is the only evidence in this case whatsoever of the speed of the vehicle. There is not any other evidence."

Later the following occurred (Italics supplied):

"Mr. French: * * * She [plaintiff] was seriously injured. There is no question about that. But let her look to the person that caused those injuries. Think of this—Mrs. Kaiser, Mr. Wilson, the Hartford Insurance Company man—

"Mr. Short: Same objection.

"The Court: Overruled.

"Mr. French: *They all* have an interest. It is not illogical at all for Mrs. Cotter to seek elsewhere for her damages. But she is not entitled to damages from Mr. McKinney. Let her look to the person that caused those injuries—Mrs. Kaiser."

In the closing argument, defense counsel mentioned Hartford at least seven times.

██ While it was within the province of defense counsel to show, if he could, that Wilson might have had an interest

which affected his credibility, it was not claimed that such interest, if shown, prevented Wilson from being "as honest as he possibly could be with regard to his recollection of the conversation" with defendant. In fact, Mr. French made that admission. But obviously the repeated interjections by defense counsel of references to Hartford were aimed, not so much at showing an interest in the witness Wilson as at directing the jury's attention to Hartford as a possible source of collection of damages. Even then counsel knew that Hartford had already been released by plaintiff by a covenant not to sue Mrs. Kaiser. Nevertheless he suggested to the jury, "But let her look to the person that caused those injuries. Think of this—Mrs. Kaiser, Mr. Wilson, the Hartford Insurance Company man * * * *They all* have an interest." (Italics supplied.) Laymen jurors were asked to believe from this language—"They all", rather than "both"—that *three* sources for recovery of *damages* were available to plaintiff, *i.e.* "Mrs. Kaiser", "Mr. Wilson" and the "Hartford Insurance Company". The verdict for defendant supports a strong inference that the jury was influenced by counsel's argument to find for defendant, which would shift the liability for damages from defendant's insurer to Hartford.[2]

In Clark v. Hasselquist, 304 Ill.App. 41 at 47, 25 N.E.2d 900 (1940), the court referred to questions put by plaintiff's counsel to a witness for defendant-appellant, one Buckley, who answered that he was investigating the case for defendant's lawyers and Travelers Insurance Company. The court said, at 48, 25 N.E. 2d at 903:

"* * * It is true as counsel for appellee argue that they had a right to show by questions on cross examination any and all interest of Buckley in the case which might affect the weight and credit to be given his testimony and that it is proper to

---

**2.** The jury knew nothing of the stipulation, *ante* 2, that plaintiff's claim against Mrs. Kaiser had been settled on a covenant not to sue. Neither was the jury informed that defendant also was represented by an insurance company.

show the relationship which exists between a witness and the parties to the suit, but here after Buckley had testified that he was investigating this case for appellant and his attorneys, counsel for appellee assumed he was investigating the case for some other party not a party to this record and his answer disclosed that other party to be an insurance company. In our opinion this examination by counsel, when considered in connection with their argument to the jury, was for no other purpose than to disclose to the jury that the Travelers Insurance Company was the insurance carrier and the trial court erred in permitting counsel to pursue their inquiries after Buckley had stated that he was investigating this case for appellant and his counsel of record."

In Davidson v. Loomis, 282 Ill.App. 515 (1935), at 519, the court said:

"The calling of the attention of the jury to the fact that the plaintiff carried accident insurance and giving the name of the insurance company was prejudicial error. It had no place in the lawsuit. Defendant was not entitled to reduce his damages because of any insurance which the plaintiff might have had and defendant cannot excuse himself now by saying that the jury was not influenced thereby. * * *"

Kavanaugh v. Parret, 379 Ill. 273, 40 N.E.2d 500 (1942) is typical of many expressions by the Illinois courts of review on this subject. At 277, 40 N.E.2d at 502, the court said:

"* * * Whether the defendant has someone to help him pay a judgment, if one is rendered against him, has nothing to do with the case on trial, and to bring it into the lawsuit is to import an influence having nothing to do with the merits of the case and designed only to aid the plaintiff at the expense of the defendant. * * *"

Likewise in Edwards v. Hill-Thomas Lime Co., 378 Ill. 180, at 186, 37 N.E.2d 801 at 804 (1941), the court said:

"* * * It is apparent under the showing made in this case that the real purpose which counsel had in mind was to advise the jury that the insurance company was making the defense and was liable for the payment of any judgment rendered.

"* * * The jury may have been influenced in returning a verdict against the defendant because it was, in this manner, improperly informed that the insurance company was making the defense and would be liable for any judgment rendered."

Repeatedly the Illinois courts have applied this principle to various stages of a trial, such as examination of jurors on *voir dire*, examination of witnesses and arguments to the jury.

We are not here confronted with a reference to insurance coverage made inadvertently by a witness in answering a proper question. We are faced with an argument to a jury made in a deliberate fashion by one skilled in the law, an attorney. The Illinois courts have been reluctant to grant a new trial because of the inadvertence, unresponsiveness, or unexpected answer of a witness to a question, which informs the jury of the fact that an insurance company carried the risk involved in the litigation. Williams v. Consumers Co., 352 Ill. 51, 185 N.E. 217 (1933).

In Pinkerton v. Oak Park National Bank, 16 Ill.App.2d 91, at 100, 147 N.E. 2d 390 at 395 (1958), relied upon by both sides in this case, the court pointed out that in Williams v. Consumers Co., supra, the Supreme Court concluded that, "in order for the mentioning of insurance to be the basis for a mistrial, counsel must have persisted in showing the existence of insurance and referring to it in such a manner as to indicate his desire and intention to prejudice and influence the jury thereby, and that effort must have

resulted in such prejudice and passion that the verdict against the defendant was influenced thereby and defendant thereby injured."

The evidence as to the happening of the accident in the case at bar and the very serious injuries thereby sustained by plaintiff lead us with certainty to the conclusion that the verdict for defendant was the result of prejudice and passion induced by the improper argument of defendant's counsel. This conclusion requires a reversal of the judgment of the district court and remandment for a new trial.

2. It is unnecessary for us to discuss other grounds for reversal urged by plaintiff, because, upon a new trial, a record may be made which will be free of error.

Judgment reversed and cause remanded for a new trial.