ZANETTI BUS LINES, INC., a corporation, Appellant,

v.

Billy R. HURD and Nellie Horton, as Administratrix of the Estate of Joe E. Weimer, deceased, Appellees.

Nellie HORTON, as Administratrix of the Estate of Joe E. Weimer, deceased, Appellant,

v.

ZANETTI BUS LINES, INC., a corporation, and Billy R. Hurd, Appellees.

Nos. 7151, 7152.

United States Court of Appeals Tenth Circuit.

July 23, 1963.

W. Page Keeton, Austin, Tex., and Forrest S. Blunk, Denver, Colo. (Clarence A. Swainson, of Swainson & Swainson, Cheyenne, Wyo., on the brief), for Zanetti Bus Lines, Inc.

Bard Ferrall, of Ferrall, Bloomfield, Osborn & Lynch, Cheyenne, Wyo., for Nellie Horton.

Carleton A. Lathrop and James A. Tilker, Cheyenne, Wyo., for Billy R. Hurd.

Before MURRAH, Chief Judge, and PICKETT and LEWIS, Circuit Judges.

PICKETT, Circuit Judge.

This action to recover damages for personal injuries grows out of a collision involving three motor vehicles in Sweetwater County, Wyoming. A Pacific Intermountain Express truck was traveling in a westerly direction on U. S. Highway No. 30 between Rock Springs and Green River. A Buick automobile was driven by Joe E. Weimer in an easterly direction, followed by two passenger busses owned by Zanetti Bus Lines. There was considerable ice and snow on the road, which was described as being "extremely icy and slippery." The two busses, loaded with passengers, were traveling at speeds of 55 to 60 miles per hour. The driver of the first bus testified that his speed was reduced to about 45 miles per hour during the one and one-half or two miles which he followed the Weimer car, but the tachometer [1] attached to the second bus showed that it was traveling 55 miles per hour immediately before the collision. Weimer's car skidded and crossed the center line into the path of the oncoming P. I. E. truck, and in the resulting collision Weimer was killed. The first Zanetti bus passed the Weimer car and the truck just after the collision, and stopped 200 to 300 feet beyond. After the collision the truck went out of control, crossed over into the eastbound lane of traffic, and was struck broadside by the second Zanetti bus. The Plaintiff Hurd, one of the two truck drivers, was in the sleeping compartment of the truck, and received the injuries complained of in this action. He sued the Zanetti Bus Lines and Weimer's administratrix jointly. A jury returned a verdict against both defendants for $74,822.23, and judgment was entered thereon.

Appellants first contend that there was insufficient evidence to sustain a finding that either of them was negligent. Section 31–130, Wyo.Stat.1957, (Supp.1961), provides in part: ·

"(a) No person shall drive a vehicle on a highway at a speed great-er than is reasonable and prudent under the conditions and having regard to the actual and potential hazards then existing. In every event speed shall be so controlled as may be necessary to avoid colliding with any person, vehicle or other conveyance on or entering the highway in compliance with legal requirements and the duty of all persons to use due care. * * *

"(c) The driver of every vehicle shall, consistent with the requirements of paragraph (a), drive at an appropriate reduced speed when approaching and crossing an intersection or railway grade crossing, when approaching and going around a curve, when approaching a hill crest, when traveling upon any narrow or winding roadway, and when special hazard exists with respect to pedestrians or other traffic or by reason of weather or highway conditions."

As to the Weimer case, there was evidence that the car was being driven on an icy road at a speed of from 40 to 45 miles per hour. It first skidded and "fishtailed" when the truck was about 2,000 feet away, but the driver regained control and continued. There is no evidence that the speed of the car was reduced appreciably after the first skid until it again skidded and spun around to the left side of the highway where it was struck by the oncoming truck.

 The rule in Wyoming is that when an automobile skids to the left side of a highway without fault of the driver there is no actionable negligence, but the burden rests on driver to show that he was without fault. Nelson v. Brames, 10 Cir., 241 F.2d 256; Butcher v. McMichael, Wyo., 370 P.2d 937; Wallis v. Nauman, 61 Wyo. 231, 157 P.2d 285. Cf. Dr. Pepper Co. v. Heiman, Wyo., 374 P.2d 206. Apparently the rule is based on the proposition that if the driver of a motor vehicle is driving on the wrong side in violation of the law of the road,

---

[1]. A tachometer is an instrument which records on a chart the speed of the vehicle to which it is attached.

and causes an injury to another, he may be excused only by showing that he was there without fault. We have no doubt that under the Wyoming decisions the driving of the car by Weimer on an icy road at speeds of 40 to 45 miles per hour presented a question of fact as to his negligence when he skidded to the left side of the highway.[2] As the court said in Dr. Pepper Co. v. Heiman, supra, 374 P.2d at 210, "This is especially true * * *" when the driver of the car "offered no evidence whatever to explain the cause for his car's going into the spin."

It is argued by Zanetti that the proximate cause of the collision between its bus and the truck was the skidding of the Weimer car, and that there was no evidence of negligence on its part which was a probable factor in the cause of the collision in which the plaintiff was injured. It is urged that regardless of the speed of the bus, the second collision could not have been avoided. It is true that the evidence is without conflict that the Zanetti bus, prior to the collision with the truck, was on its side of the road, and the bus driver had the right to assume that vehicles traveling in the opposite direction would observe the law of the road and remain on the right side thereof. Cimoli v. Greyhound Corp., Wyo., 372 P.2d 170; Dallason v. Buckmeier, 74 Wyo. 125, 284 P.2d 386; O'Mally v. Eagan, 43 Wyo. 233, 2 P.2d 1063, 77 A.L.R. 582, reh. den. 43 Wyo. 350, 5 P.2d 276, 77 A.L.R. 582. This rule, however, does not relieve the driver of a motor vehicle from using ordinary care to avoid an impending colli-sion, and in many cases the finder of fact must determine whether, in view of all the circumstances, a driver exercised due care to avoid an accident, even though he remained on the proper side of the road. In Cimoli v. Greyhound Corp., supra, the Cimoli car was being driven in an easterly direction when a rear tire blew out, and the driver had difficulty keeping the car on the right side of the road. The driver of the Greyhound bus traveling in the opposite direction observed from a distance of approximately 900 feet that the Cimoli car was in trouble of some kind. He reduced his speed to about 35 miles per hour, and at the same time moved the vehicle to the extreme right side of the pavement. As the vehicles approached each other the Cimoli car remained near the center of the road until it reached a point about 450 feet from the point of collision. Then it gradually returned completely to the right side of the road, and continued there until about 120 feet away when it swerved abruptly to the left in front of the bus, which struck the right side of the car. The court held that a jury question was presented as to whether the driver of the Greyhound bus, after observing the difficulty of the Cimoli car, acted as a reasonable man under the circumstances in order to prevent a collision.

In the case at bar there is evidence that the Weimer car was from 150 to 250 feet ahead of the first Zanetti bus and that the second Zanetti bus was 200 to 300 feet behind the first bus when its brakes were first applied.[3] The collision between the truck and the Wei-

2. In Dr. Pepper Co. v. Heiman, Wyo., 374 P.2d 206, 207, the Supreme Court of Wyoming sustained a finding of negligence in a skidding-auto case, saying:
 "However, the fact that plaintiff may have reduced his speed to between 30 and 35 miles an hour after passing defendant's car must not be overlooked. And while the negligence of defendant is not at issue upon this appeal, still the evidence seems undisputed that defendant was also traveling at a speed of between 30 and 35 miles an hour, following plaintiff's car at a distance of between 250 and 300 feet at the time plaintiff's car went into its spinning. In any event it seems conclusively established that both cars were being driven at speeds of as much as 35 miles an hour when plaintiff's car went out of control, and it was the province of the trier of fact to determine whether, under all the facts and circumstances present at the time, the driving of a car at that speed was negligence."

3. A passenger in the bus testified that prior to the collision the brakes were set,

mer car was 140 feet east of the point where the second collision occurred. The driver of the second Zanetti bus was killed, and there is no evidence that he observed the first or second skidding of the Weimer car. It was daylight, however, and there is no reason why the skidding could not have been observed if a proper lookout had been maintained by the driver.[4] Neither is there any evidence that the driver attempted to decrease the speed of the second bus, which was about 55 miles per hour, on an icy road, until it was obvious that the truck was going to cross over into the east-bound lane of traffic. Furthermore, we are satisfied that a question of fact was presented as to whether, considering the potential hazards of the slippery highway, the Zanetti bus was being operated at a speed which was reasonable and prudent. Holstedt v. Neighbors, Wyo., 377 P.2d 181; Dr. Pepper Co. v. Heiman, supra; Cimoli v. Greyhound Corp., supra; Butcher v. McMichael, supra; Frazier v. Pokorny, Wyo., 349 P.2d 324.

■ The evidence is without dispute that when the Weimer car and the two Zanetti busses were about to meet and pass the truck, the distance between the first and second Zanetti bus was from 200 to 300 feet. Section 31–108, Wyo. Stat.1957, provides:

"(a) The driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicles and the traffic upon and the condition of the highway.

"(b) The driver of any motor truck or bus or motor trucks draw-

ing another vehicle when traveling upon a roadway outside of a business or residence district shall not follow within one thousand (1000) feet of another motor truck or bus or motor trucks drawing another vehicle. The provision of this subdivision shall not be construed to prevent overtaking and passing nor shall the same apply upon any lane specially designated for use by motor trucks."

In its instructions, the trial court read these sections, and stated:

"You are further instructed that a violation of the above laws, if you find there was a violation, is a circumstance which you may consider, together with all the other facts and circumstances of the case, in determining the question of negligence on the part of the defendants or either of them.

" * * * If you find that this bus was following closer than 1,000 feet, that standing alone or separately is not negligence unless you find that the driving in this proximity was a contributing factor in causing the accident which occurred. In other words, it is a circumstance which you will consider, together with all the other facts and circumstances of the case, in determining whether there was or was not negligence on the part of the Defendant Zanetti Bus Lines. That applies only to the bus, this section which I have just read to you."

It will be observed that this instruction is limited to Zanetti and could not be prejudicial to the Administratrix of the

---

and the bus skidded 100 to 200 feet. The photographs taken of the vehicles show that the bus struck the truck with great force, completely demolishing the front end of the bus.

4. In referring to the rule that a person has the duty to see that which should have been seen, the Wyoming Supreme Court in Holstedt v. Neighbors, Wyo., 377 P.2d 181, 183, said:
"This presents the very exemplification of the rule of law that a person is

charged with seeing that which is there to be seen the same as though the person looked and saw what was there to be seen. Taking together the statements of defendant as to her actions and the statements of Pamela's mother and sister as to the presence of the unfortunate child, there was substantial evidence to charge defendant with the duty of seeing what was there for defendant to see, and the failure to do so would justify a jury in concluding defendant was negligent."

Weimer Estate. Zanetti contends that the giving of this instruction was error (1) because the collision in which the plaintiff was injured did not result from the hazard which the statute was designed to guard against, and (2) that assuming the violation of the "following too closely" statute was a breach of duty which the plaintiff could rely upon, the record does not disclose that the violation was the proximate cause of plaintiff's injuries. The Wyoming courts have not had occasion to pass upon the first question, and we find it unnecessary to do so because there was no evidence of any kind to show a causal connection between the statutory violation and the collision from which plaintiff's injuries resulted.

We said in Grayson v. Williams, 10 Cir., 256 F.2d 61, 64–65:

" * * * [T]he Wyoming court * * * is * * * committed to the doctrine that a violation of a traffic law or regulation will impose liability only when it is the proximate cause of the resulting injuries."

Nelson v. Brames, supra; Nelson v. Brames, 10 Cir., 253 F.2d 381; Checker Yellow Cab Co. v. Shiflett, Wyo., 351 P. 2d 660; Christensen v. McCann, 41 Wyo. 101, 282 P. 1061. In determining what constitutes proximate cause, the same principles are to be applied whether the negligence is alleged to be the violation of a statutory duty or a nonstatutory duty. 7 Am.Jur.2d, Automobiles & Highway Traffic § 375. "Proximate cause" has been defined as that " * * which in natural and continuous sequence, unbroken by any efficient intervening cause, produces the injury, and without which the result would not have occurred." Lemos v. Madden, 28 Wyo. 1, 200 P. 791, 793. In discussing the question of whether an injury was the natural and probable consequence of a

negligent act, the Wyoming Supreme Court, in Frazier v. Pokorny, Wyo., 349 P.2d 324, 329, quoted 38 Am.Jur., Negligence § 57 with approval, as follows:

" * * * An injury is deemed the natural and probable result of a negligent act if after the event, and viewing therefrom in retrospect to the act, the injury appears to be the reasonable rather than the extraordinary consequence of the wrong." *

Cf. Garland v. Wilcox, 220 Or. 325, 348 P.2d 1091. The record does not disclose that the distance between the first and second Zanetti busses had any causal connection whatever to the second collision or that the collision would not have occurred if the first Zanetti bus had not been on the highway. The first bus was not involved in the collision between the truck and the second bus, which was traveling at all times in the proper lane of traffic and within the statutory speed limit. We cannot say that the giving of this instruction was not prejudicial to the defendant Zanetti. The jury could well have reasoned, under an instruction which permitted it to consider the violation of the "following too closely" statute, "together with all the other facts and circumstances of the case", that had the second bus been 1,000 feet back of the first bus, it would have been at a different place on the highway and the second collision might not have occurred. Under the circumstances, the violation of the statute created only a condition of the accident. The real cause of the collision lies elsewhere. 38 Am.Jur., Negligence § 166; O'Mally v. Eagan, supra; Hayes Freight Lines v. Wilson, 226 Ind. 1, 77 N.E.2d 580.

Zanetti excepted to the court's instruction on the duty of a driver of a motor vehicle to be on the lookout for others who may be using the highways.[5] It is conceded that the instruction is an ac-

5. This instruction was as follows:
"There are a few rules of the road which I will read to you. I charge you that it is the duty of drivers upon the public highway to look ahead and see persons and vehicles and other objects in their line of vision, and in case of an accident they will be conclusively presumed to have seen what they could and should have seen in the proper performance of their duties."

curate statement of the law, but it is urged that it should not have been given because there was no evidence that the driver of the second Zanetti bus failed to keep a proper lookout. There was evidence that after the skidding of the Weimer car the driver did not apply the bus brakes "hard" until the truck was crossing over to the south side of the highway. The jury could have inferred that the bus driver should have seen the possibility of danger and attempted to stop his vehicle sooner than he did. We cannot assume that the driver could not see what was happening on the highway ahead of him. Certainly he should have seen the Weimer car when it skidded to the left side of the road. There was no error in giving the instruction.

■ The Administratrix of the Weimer Estate assigns as error the overruling of a motion for a mistrial which was based upon an answer to a question by one of plaintiff's witnesses. During cross-examination, the witness was interrogated concerning prior statements he had made to a Mr. Hughes. On redirect examination inquiry was made of the witness as to the identity of Hughes. The answer was: "I believe he was representing some insurance company." No objection was made to the question or answer. Later, outside the hearing of the jury, the motion for mistrial was made by Zanetti. In cases such as this, counsel should be careful not to invite answers which will indicate that insurance companies are or are not involved or interested in the outcome of the litigation, but inadvertent references are not generally grounds for mistrial or reversal. 20 Am.Jur., Evidence § 388; McCormick, Evidence, (1954) § 168, pp. 355–358. See, generally, Wigmore, Evidence, § 282a. The cross-examination was such that the jury was entitled to know the interest of the person to whom

the statement was made, and the record does not indicate that in asking the question plaintiff's counsel intended any unfair advantage or that the answer was prejudicial to the defendant-administratrix. Sears, Roebuck & Co. v. Wedgeworth, 5 Cir., 252 F.2d 759; Cotter v. McKinney, 7 Cir., 309 F.2d 447; Sphatt v. Tulley, 38 Ill.App.2d 229, 186 N.E.2d 670; Marken v. Empire Drilling Co., 75 Wyo. 121, 293 P.2d 406; Anno. 4 A.L.R. 2d 820.

■ No issue is presented here by either party as to the amount of the verdict and the judgment entered thereon. We find no error in the trial as to the defendant-administratrix of Weimer's Estate. The only prejudicial error was the giving of the instruction on the Wyoming "following too closely" statute, which relates only to the liability of Zanetti. This, we think, would have no bearing on the amount of the jury's award and that there will be no injustice or unfairness to either party in requiring a retrial on the issue of liability only. Satter v. Turner, 251 Minn. 1, 86 N.W.2d 85, 66 A.L.R.2d 1178; Anno. 34 A.L.R. 2d 988. Cf. Studer v. Rasmussen, 80 Wyo. 465, 344 P.2d 990. 28 U.S.C. § 2106 gives broad powers to Federal courts of appellate jurisdiction to affirm, modify, vacate, set aside, or reverse judgments or decrees and to remand causes of action to the district court for further proceedings as are just under the circumstances. We are convinced that this is a classic case for the exercise of that power. Thompson v. Camp, 6 Cir., 167 F.2d 733. See notes to decisions, N. 344, 28 U.S. C.A. § 2106.

The judgment against Nellie Horton as Administratrix of the Estate of Joe E. Weimer, Deceased, is affirmed. The judgment against Zanetti Bus Lines, Inc., is reversed and remanded for a new trial only upon the issue of liability.