Gloria **RIOS**, Plaintiff–Appellant,

v.

F. Calvin **BIGLER**, M.D. and Lauren A. **Welch**, M.D., Defendants–Appellees.

No. 94–3240.

United States Court of Appeals, Tenth Circuit.

Oct. 17, 1995.

Submitted on the briefs: *

Bryson R. Cloon, of Cloon, Bennett & Ronan, Overland Park, Kansas, for Plaintiff–Appellant.

Janet M. Simpson (Brent G. Wright, with her on the brief), of Holbrook, Heaven & Fay, P.A., Kansas City, Kansas, for Defendant–Appellee.

Before MOORE, ANDERSON, and BALDOCK, Circuit Judges.

BALDOCK, Circuit Judge.

Plaintiff Gloria Rios brought the instant diversity action against Defendants F. Calvin Bigler, M.D., and Lauren Welch, M.D., in the district court alleging Defendants negligently failed to diagnose and treat her Reflex Sympathetic Dystrophy ("RSD").[1] Plaintiff and Dr. Bigler settled before trial. A jury returned a verdict in favor of Defendant. Plaintiff appeals asserting the district court committed reversible error by: (1) refusing to instruct the jury on the theory of loss of chance of recovery; (2) denying Plaintiff's motion for a mistrial based upon a reference to malpractice insurance made by Defendant's expert witness; and (3) granting Defendant partial summary judgment on Plaintiff's claim that Defendant negligently failed to diagnose her RSD. We have jurisdiction pursuant to 28 U.S.C. § 1291.

I.

In September 1990, Plaintiff injured her wrist pulling sheets from a bin while working at Western Uniform and Towel ("Western") in Garden City, Kansas. Plaintiff went to see Western's worker's compensation physician, Dr. Bigler. Dr. Bigler x-rayed Plaintiff's wrist, discovered a ganglion cyst, and excised the cyst. For the next three months,

---

* After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The case therefore is ordered submitted without oral argument.

1. Defendant Bigler will hereinafter be referred to as "Dr. Bigler" and Defendant Welch will hereinafter be referred to as "Defendant."

Plaintiff saw Dr. Bigler for follow-up care. Plaintiff complained of numbness and pain in her wrist. Dr. Bigler could not find any objective problems and concluded Plaintiff's condition was psychologically based. In late 1990, Dr. Bigler informed Plaintiff he would be retiring and that his associate, Defendant, would take over his practice.

In early 1991, Plaintiff went to see Defendant and informed him that she was experiencing numbness and pain in her wrist. Defendant reviewed Dr. Bigler's records and determined Plaintiff's condition was psychological. Defendant prescribed medication for Plaintiff's pain and swelling, and referred her to physical therapy. Defendant ordered a nerve conduction study to determine whether Plaintiff was suffering from carpal tunnel syndrome or compression of the ulnar nerve. The results were normal. On April 4, 1991, Defendant saw Plaintiff for the last time. Defendant placed a cast on Plaintiff's wrist to immobilize it.

On April 18, 1991, Plaintiff went to see Dr. Guillermo Garcia, an orthopedic surgeon. Dr. Garcia removed Plaintiff's cast, examined her wrist, and diagnosed Plaintiff with chronic RSD.[2] Dr. Garcia immediately referred Plaintiff to physical therapy, and subsequently to another physician. Subsequent testing physicians confirmed Dr. Garcia's RSD diagnosis. Ultimately, Plaintiff was referred to a pain management treatment program, where a physician determined Plaintiff's RSD was extremely severe, permanent, and irreversible. Vol. I at 290.

In February 1993, Plaintiff filed a medical malpractice action against Defendant and Dr. Bigler in the district court. In November 1993, the parties prepared a pretrial order, in which Plaintiff set forth her theories of the case. Plaintiff specified that Defendant and Dr. Bigler negligently failed to: (1) properly care for and treat her; (2) timely diagnose her condition; (3) perform proper diagnostic testing; (4) treat or prevent her development of RSD; and (5) obtain timely consultations from appropriate specialists or refer Plaintiff to appropriate specialists for treatment.

Plaintiff set forth specific claims of damages for: (1) pain and suffering; (2) disability; (3) disfigurement and accompanying mental anguish; (4) necessary medical expenses; (5) lost wages past and future; (6) lost household and personal service; (7) husband's loss of income while at home caring for Plaintiff; and (8) husband's loss of services and companionship.

On November 19, 1993, Defendant deposed Plaintiff's designated liability expert, Dr. Michael Stanton–Hicks. During the deposition, the following colloquy occurred:

Q: [By Defendant's counsel] And I've listened to you for several hours now and I believe you have said that you are not critical of the physicians in this case for failing to make a diagnosis of reflex sympathetic dystrophy?

A: [By Dr. Stanton–Hicks] No.

Q: That's correct?

A: That is correct.

Vol. I at 93.

Based upon Dr. Stanton–Hicks' testimony, in January 1994, Defendant filed a motion for partial summary judgment on, *inter alia*, Plaintiff's claim that Defendant was negligent in failing to diagnose her RSD. Defendant maintained that because Dr. Stanton–Hicks stated he was not critical of Defendant for failing to diagnose RSD, Plaintiff's claim was not supported by expert testimony. As a result, Defendant contended he was entitled to summary judgment on Plaintiff's failure to diagnose claim.

In February 1994, Plaintiff filed a memorandum in opposition to Defendant's motion for partial summary judgment. Plaintiff submitted with the memorandum an errata sheet and affidavit prepared by Dr. Stanton–Hicks that sought to clarify his deposition testimony. Specifically, Dr. Stanton–Hicks sought to clarify his previous testimony that he was not critical of Defendant for failing to diagnose RSD, stating that if Defendant "holds himself out as qualified to recognize and treat RSD, then he is guilty of failing to

---

**2.** RSD is a disease process "characterized by a devastating amount of pain, swelling, discoloration, and stiffness in an extremity as a result of vasomotor dysfunction of the sympathetic nervous system, which can occur following trauma, surgery, or local and systemic disease." Vol. I. at 273. RSD progresses through three stages, with the patient's recovery success rate dropping with each progressive stage.

properly diagnose RSD and treat it promptly." Vol. I at 213.

The district court granted Defendant's motion for partial summary judgment on Plaintiff's failure to diagnose claim. The court explained that Dr. Stanton–Hicks was asked during his deposition whether he was critical of Defendant for failing to diagnose RSD and he said no. The court did not consider the material changes to Dr. Stanton–Hicks' testimony offered by Plaintiff in the affidavit and errata sheet. The court concluded that an errata sheet, like an affidavit, may be used to clarify an answer when a question is misunderstood, but cannot be employed as a "take home examination" to later materially alter statements made under oath. The court concluded Dr. Stanton–Hicks' affidavit was simply an attempt to create a sham fact issue by contradicting his previous sworn testimony. Moreover, the court concluded that the clarifications, even if considered, did not establish that Defendant violated the applicable standard of care by failing to diagnose RSD. As a result, the court granted Defendant's motion for partial summary judgment on Plaintiff's failure to diagnose claim.

On March 25, 1994, Plaintiff and Dr. Bigler settled. On March 29, 1994, Plaintiff and Defendant proceeded to trial. During Plaintiff's case-in-chief, Dr. Stanton–Hicks sought to testify regarding Defendant's alleged negligent failure to diagnose RSD. Defendant objected to the testimony, contending the court had excluded the issue of failure to diagnose. The court granted the objection. Plaintiff requested the court grant her leave to amend the pleadings to include the issue of failure to diagnose. The court denied Plaintiff's request.

During Defendant's case-in-chief, Defendant called Dr. Bigler as an expert witness. During preliminary questioning, the following exchange occurred:

Q: [By Defendant's counsel] All right sir. And where are you currently licensed, Doctor Bigler?

A: [By Dr. Bigler] I'm fully licensed in the State of New Mexico, and have a feder-

ally restricted license in the State of Kansas—States of Kansas and Colorado.

Q: Okay. When you say "federally restricted license," what do you mean by that?

A: Well, simply that I'm fully licensed insofar as being able to practice with the Federal Government, *but I do not have to have the mandatory expense of the malpractice insurance in the State of Kansas, for instance, and that's—that's quite a financial savings.*

Aplee.Supp.App. at 22–23 (emphasis added).

Plaintiff did not immediately object, but moved for a mistrial at the close of Dr. Bigler's testimony. Plaintiff contended Dr. Bigler's reference to malpractice insurance was intentional and resulted in unfair prejudice to her. Plaintiff noted that Dr. Bigler's reference was especially prejudicial because one of the jurors on the panel expressed reluctance during voir dire about malpractice lawsuits. The court denied Plaintiff's motion, but offered to give a limiting instruction to the jury. Plaintiff did not request one.

■ Following the presentation of evidence, Plaintiff tendered a proposed instruction on the loss of chance of recovery doctrine.[3] The court rejected Plaintiff's instruction concluding Plaintiff had not set forth the theory of loss of chance of recovery as an issue or claim in the pretrial order:

> With regard to the loss of chance of recovery, I am not going to submit that as a separate theory. That was not set out or preserved as an argument in the Pre–Trial Order in terms of something we were going to be trying to make some recovery on. I've gone back and looked at the Pre–Trial Order. It's a straight, plain vanilla, if you will, argument that Defendant's negligence caused the injuries that the Plaintiff is complaining about, and that's what the case will be submitted on.

Vol. II at 490. The jury returned a verdict in favor of Defendant on all issues.

---

**3.** The loss of chance of recovery doctrine "serves to fairly compensate the plaintiff for the tortious deprivation of an opportunity to live longer or recover from a physical injury or condition inflicted by the defendant's wrongful act or omis-

sion." *Delaney v. Cade,* 873 P.2d 175, 182 (Kan. 1994) (quoting Keith, *Loss of Chance: A Modern Proportional Approach to Damages in Texas,* 44 Baylor L.Rev. 759, 760 (1992)) (emphasis omitted).

Plaintiff filed a motion for new trial, asserting the court erred by: (1) preventing her from presenting evidence at trial on her failure to diagnose theory, and (2) denying her motion for a mistrial based upon Dr. Bigler's intentional injection of malpractice insurance into the case. After Plaintiff filed her motion for a new trial, the Kansas Supreme Court issued its opinion in *Delaney v. Cade*, 873 P.2d 175, 183 (Kan.1994), wherein the court held that Kansas recognizes the theory of loss of chance for a better recovery in medical malpractice actions. Plaintiff then filed an amended motion for new trial or in the alternative relief from judgment under Fed.R.Civ.P. 60(b), asserting the previous two grounds and additionally contending the court erroneously failed to instruct the jury on the doctrine of loss of chance of recovery.

The court rejected each of Plaintiff's grounds for new trial. As to Plaintiff's first ground, the court essentially reiterated its ruling at summary judgment. Specifically, the court concluded Dr. Stanton–Hicks stated in his deposition that he was not critical of Defendant for failing to diagnose RSD. The court stood by its refusal to consider the corrected deposition testimony of Dr. Stanton–Hicks. In any event, the court concluded Plaintiff was not prejudiced at trial because Dr. Stanton–Hicks "was, in effect, permitted to testify in full as to his opinions regarding [Defendant's] ... alleged departures from the acceptable standard of care, and any limits imposed did not substantively affect his testimony." Vol. I at 506.

The court also rejected Plaintiff's second contention:

The court does not find that either Dr. Bigler or defendant's counsel intentionally attempted to inflame the jury, but rather it perceived the witness' comment as a careless, stray remark. Even if one could infer some disdain from his tone and manner (which the court did not), [Dr. Bigler's] comment was brief and the words themselves neutral; he did not issue a diatribe on the excessive costs of medical malpractice insurance.... [T]he court is simply not persuaded that the "injection of insurance" into the case was prejudicial to plaintiff. It certainly was not grounds for a mistrial and is not now grounds for a new trial.

The fact that some jurors expressed concern in voir dire that "some plaintiffs" seek "too much money" does not help plaintiff's cause. The court found that these jurors would be able to fairly decide the case based on the evidence presented. Counsel for plaintiff had an opportunity to strike these witnesses [sic] if he so desired, but chose not to.

Vol. I at 508–09 & n. 4.

Finally, the court rejected Plaintiff's third contention. The court emphasized that the Kansas Supreme Court's recognition of the theory of loss of chance for a better recovery after the instant trial was irrelevant. The court noted that it did not refuse to instruct the jury on the theory of loss of chance for a better recovery because Kansas had not yet recognized the theory. Instead, the court explained it "refused to give the instruction because 'loss of chance' was not properly an issue in the case as those issues were framed in the pretrial order." Vol. I at 510–11 (citations omitted) (emphasis added). Because the court rejected each of Plaintiff's grounds, it consequently denied her motion for new trial and amended motion for new trial or in the alternative relief from judgment under Fed.R.Civ.P. 60(b). This appeal followed.

## II.

### A.

On appeal, Plaintiff first contends the district court erred by refusing to instruct the jury on the theory of loss of chance of recovery. Plaintiff argues that the Kansas Supreme Court definitively accepted the theory of loss of chance of recovery in *Cade* and that she properly raised the theory as an issue in the pretrial order. Specifically, Plaintiff maintains she sufficiently raised the theory in three statements in the pretrial order: (1) "Plaintiff relies on the theories of professional negligence of a health care provider...."; (2) Defendant "Fail[ed] to perform proper diagnostic testing upon plaintiff"; and (3) Defendant "Fail[ed] to treat or in any way prevent plaintiff's development of reflex sympathetic dystrophy." Pl.Br. at 8; Vol. I at 13. Based upon these three statements, Plaintiff concludes: "That the specific meth-

od for figuring the dollar amount of recovery was not labelled in the Plaintiff's complaint does not alter the fact that the theory of recovery, professional negligence/malpractice, was constant throughout the trial proceedings." Pl.Br. at 8. As a result, Plaintiff contends the district court erred by failing to instruct the jury on the theory of loss of chance of recovery.

In response, Defendant argues that Plaintiff did not properly set forth the theory of loss of chance of recovery in the pretrial order. Defendant maintains that no language in the pretrial order sets forth the theory of loss of chance of recovery, including the language cited by Plaintiff. Defendant contends that the district court has discretion to exclude from trial issues not set forth in the pretrial order and that the court did not abuse its discretion in doing so in the instant case.

■ "On appeal of a trial court's jury instructions, the appellate court, after review of the record as a whole, must determine whether the instructions correctly state the applicable law and provide the jury with ample understanding of the issues and standards of the case." *Lamon v. City of Shawnee*, 972 F.2d 1145, 1153 (10th Cir.1992), *cert. denied*, ⸺ U.S. ⸺, 113 S.Ct. 1414, 122 L.Ed.2d 785 (1993). " 'An error in jury instructions will mandate reversal . . . only if the error is determined to have been prejudicial after reviewing the record as a whole.' " *King v. Unocal Corp.*, 58 F.3d 586, 587 (10th Cir.1995) (quoting *Brown v. Wal–Mart Stores, Inc.*, 11 F.3d 1559, 1564 (10th Cir. 1993)).

■ The pretrial order " 'measures the dimensions of the lawsuit,' " *Hullman v. Board of Trustees*, 950 F.2d 665, 668 (10th Cir.1991), and "control[s] the subsequent course of the action unless modified by a subsequent order." Fed.R.Civ.P. 16. "Since the whole purpose of Rule 16 is to clarify the real nature of the dispute at issue," *Gorlikowski v. Tolbert*, 52 F.3d 1439, 1444 (7th Cir.1995), " '[a]ttorneys at a pre-trial conference must make a full and fair disclosure of their views as to what the real issues of the trial will be.' " *Id.* (quoting *Erff v. Marktton Indus., Inc.*, 781 F.2d 613, 617 (7th Cir. 1986)). The district court has discretion to exclude from trial issues and claims not set forth in the pretrial order, *Hullman*, 950 F.2d at 668, and to refuse to instruct the jury on matters "beyond the scope of the pretrial order." *Hardin v. Manitowoc–Forsythe Corp.*, 691 F.2d 449, 456 n. 6 (10th Cir.1982); *see also Tolbert*, 52 F.3d at 1444 (collecting cases and noting that "all the circuits that have reached this issue agree that a trial court may properly exclude evidence or theories not raised in a pretrial order absent an abuse of discretion."). Accordingly, we review the district court's decision to refuse to instruct the jury on an issue it concludes is not raised in the pretrial order for an abuse of discretion. *Id.*

■ Applying these principles to the instant case, the district court refused to instruct the jury on the theory of loss of chance of recovery because it concluded Plaintiff failed to set forth the theory in the pretrial order. Based upon our careful review of the pretrial order and the record as a whole, we conclude the court did not abuse its discretion. The pretrial order contains no assertion by Plaintiff that she is relying on the distinct theory of loss of chance of recovery as one of her claims. The pretrial order contains assertions, including those cited by Plaintiff, that alert Defendant to Plaintiff's overarching claims of negligence. Plaintiff's assertions of broad, "plain vanilla" negligence, however, do not alert Defendant that she is relying on the specific theory of loss of chance for a better recovery, which requires Plaintiff to prove: (1) the traditional elements of a medical malpractice action, *and* (2) that she had a "substantial" chance for a better recovery and suffered a "substantial" injury as a result of the alleged negligence. *Cade*, 873 P.2d at 185–87. Moreover, Plaintiff apparently did not attempt to amend the pretrial order either during trial or after to include the theory of loss of chance of recovery. *See* Fed.R.Civ.P. 16(e) (pretrial order may be modified to prevent manifest injustice); *Hardin*, 691 F.2d at 456 (pretrial order may be amended after trial under Fed. R.Civ.P. 15(b) if an issue not raised is tried by consent). As a result, we cannot say the court abused its discretion in failing to instruct the jury on the theory of loss of chance of recovery.

## B.

Plaintiff next contends the court erred by denying her motion for mistrial/new trial based upon the comment made by Dr. Bigler about malpractice insurance. Specifically, Plaintiff contends that the district court should have granted her motion for mistrial/new trial because Dr. Bigler purposefully injected the theory of insurance into the case to inflame the jury and that his remark was inherently prejudicial, especially given comments made by jurors during voir dire regarding malpractice insurance claims. We disagree.

■ We review the district court's denial of a motion for mistrial for abuse of discretion. *Orjias v. Stevenson*, 31 F.3d 995, 1005 (10th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 511, 130 L.Ed.2d 418 (1994). " 'In deciding whether the court abused its discretion, we assume that the trial judge is in the best position to determine whether an incident was so serious as to warrant a mistrial.' " *Raybestos Prods. Co. v. Younger*, 54 F.3d 1234, 1239 (7th Cir.1995) (quoting *Wilson v. Groaning*, 25 F.3d 581, 587 (7th Cir. 1994)). "Denial of a motion for a new trial is within the discretion of the trial court and will not be disturbed on appeal in the absence of manifest abuse of discretion." *Joseph v. Terminix Int'l Co.*, 17 F.3d 1282, 1285 (10th Cir.1994).

■ Under Fed.R.Evid. 411, "[e]vidence that a person was or was not insured against liability is not admissible upon the issue whether he acted negligently or otherwise wrongfully." Fed.R.Evid. 411. Inadvertent references to insurance, however, "are not generally grounds for mistrial or reversal." *Zanetti Bus Lines, Inc. v. Hurd*, 320 F.2d 123, 129 (10th Cir.1963); *see also Younger*, 54 F.3d at 1240 n. 7 ("[C]ourts have uniformly retreated from the 'extreme position' of granting a mistrial whenever there is an erroneous disclosure of the existence of insurance."); *Roy v. Star Chopper Co.*, 584 F.2d 1124, 1135 (1st Cir.1978) (inadvertent reference to fact that defendant carried insurance not prejudicial and therefore not grounds for mistrial or new trial), *cert. denied,* 440 U.S. 916, 99 S.Ct. 1234, 59 L.Ed.2d 466 (1979); 2 Christopher B. Mueller & Laird C. Kirkpatrick, *Federal Evidence* § 153, at 178–79 & n. 9 (2d ed. 1994) (collecting cases and noting that erroneous mention of insurance "seldom requires a reversal"); 2 Jack B. Weinstein et al., *Weinstein's Evidence* § 411[10] (1995) (unexpected, inadvertent reference to insurance almost never grounds for new trial).

■ Applying these principles to the instant case, we conclude the district court did not abuse its discretion by failing to grant Plaintiff's motions for mistrial and new trial based upon an inadvertent reference to malpractice insurance made by Dr. Bigler. *Hurd*, 320 F.2d at 129. The district court was in the best position to assess the remark made by Dr. Bigler, *Younger*, 54 F.3d at 1239, and concluded the remark was careless, unintentional and not prejudicial such that a new trial was warranted. Moreover, the district court offered to give a limiting instruction to the jury, but Plaintiff did not request one. *See Robinson v. Audi Nsu Auto Union*, 739 F.2d 1481, 1485 (10th Cir.1984) (plaintiff's failure to request limiting instruction waives any objection to absence of instruction). As a result, the district court did not abuse its discretion in denying Plaintiff's motions for mistrial and new trial.

## C.

Plaintiff last contends that the court erred by granting Defendant partial summary judgment on her claim that Defendant negligently failed to diagnose RSD. Specifically, Plaintiff maintains the court's grant of Defendant's motion for partial summary judgment was erroneous because Dr. Stanton-Hicks' corrected testimony established an issue of material fact as to whether Defendant negligently failed to diagnose Plaintiff's RSD. Plaintiff argues the changes to Dr. Stanton-Hicks' deposition testimony were proper under Fed.R.Civ.P. 30(e). Plaintiff further contends the court erred by refusing to allow her to amend her complaint to conform to the evidence at trial under Fed.R.Civ.P. 15(b). We disagree.

■ "We review the district court's entry of summary judgment de novo, applying the same legal standard used by the district court under Fed.R.Civ.P. 56(c)." *Schuster-*

*man v. United States,* 63 F.3d 986, 989 (10th Cir.1995). Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

■ "[C]ourts will disregard a contrary affidavit when they conclude that it constitutes an attempt to create a sham fact issue." *Franks v. Nimmo,* 796 F.2d 1230, 1237 (10th Cir.1986). To determine whether a contrary affidavit seeks to create a sham fact issue, we determine whether: (1) "the affiant was cross-examined during his earlier testimony;" (2) "the affiant had access to the pertinent evidence at the time of his earlier testimony or whether the affidavit was based on newly discovered evidence;" and (3) "the earlier testimony reflects confusion which the affidavit attempts to explain." *Id.*

Rule 30 of the Federal Rules of Civil Procedure provides the basic rules for the procedures used in taking depositions by oral examination. *See* Fed.R.Civ.P. 30. Specifically, Rule 30(e) provides that:

> If requested by the deponent or a party before completion of the deposition, the deponent shall have 30 days after being notified by the officer that the transcript or recording is available in which to review the transcript or recording and, if there are changes in form or substance, to sign a statement reciting such changes and the reasons given by the deponent for making them. The officer shall indicate in the certificate prescribed by subdivision (f)(1) whether any review was requested and, if so, shall append any changes made by the deponent during the period allowed.

Fed.R.Civ.P. 30(e). Rule 30(f)(1) specifies that the certificate where such request is noted "shall" accompany the deposition and be filed with the deposition or sent to the attorney who arranged for the transcript or recording. Under the plain language of Rule 30(e) therefore, the deponent or party must request review of the deposition before its completion. The deponent then has thirty days following notification by the officer that the transcript or recording is available to make "changes in form or substance" to the deposition.

■ Rule 15(b) of the Federal Rules of Civil Procedure specifies two instances in which a party may move to amend the pleadings to conform to evidence presented at the trial. Specifically, Rule 15(b) provides that:

> When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings.... If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice the party in maintaining the party's action or defense upon the merits.

Fed.R.Civ.P. 15(b). The decision to grant or deny an amendment under Rule 15(b) is within the discretion of the district court and will not be disturbed on appeal absent an abuse of that discretion. *See Hardin,* 691 F.2d at 456.

■ Applying these principles, we conclude the court did not err in granting Defendant's motion for partial summary judgment on Plaintiff's failure to diagnose claim. Dr. Stanton–Hicks testified during his deposition that he was not critical of Defendant for failing to diagnose RSD. Dr. Stanton–Hicks was Plaintiff's sole designated liability expert. Thus, Plaintiff's claim that Defendant negligently failed to diagnose her RSD was not supported by expert testimony. As a result, the court properly determined no genuine issue of material fact remained on this claim and that Defendant was entitled to judgment as a matter of law. *See, e.g., Wozniak v. Lipoff,* 750 P.2d 971, 975 (Kan.1988) (actionable negligence in medical malpractice action established only by expert testimony).

■ Furthermore, we conclude the district court properly refused to consider the affidavit submitted by Dr. Stanton–Hicks on the grounds that the affidavit attempted merely to create a sham issue of fact. *Franks,* 796 F.2d at 1237. The court concluded:

> In his deposition, Dr. Stanton–Hicks is not at all critical of Dr. Welch's failure to diagnose RSD. In an affidavit signed af-

ter the filing of summary judgment motions, he attempts to qualify his unqualified deposition testimony.... Dr. Stanton–Hicks was asked repeatedly in the deposition if he was critical of either Dr. Bigler or [Defendant] ... for a failure to diagnose, and repeatedly and consistently answered no. He never stated that his opinions would change if [Defendant] ... possessed more knowledge than what is reasonably required of a general surgeon practicing in Garden City, Kansas. Plaintiff had the opportunity to elicit such testimony, but did not do so.... The court is convinced that this is an attempt to create sham fact issues.

Vol. I at 311–12. We agree. Applying *Franks,* Dr. Stanton–Hicks was subject to both direct and cross-examination during his deposition, had access to pertinent materials to support his contentions or should have been apprised of the relevant materials by Plaintiff's counsel, and his deposition testimony was unequivocal. *Franks,* 796 F.2d at 1237. We therefore conclude the court properly refused to consider the affidavit of Dr. Stanton–Hicks on the grounds that it sought to create a sham issue of fact.

■ Moreover, we cannot review Plaintiff's contention that she was entitled to submit changes to Dr. Stanton–Hicks' deposition under Rule 30(e) because Plaintiff has failed to submit the proper record on appeal. The requirements of Rule 30(e) are clear. To make "changes in form or substance" to a deposition pursuant to Rule 30(e), a party or deponent must request review of his deposition before its completion, and the officer conducting the deposition must denote the request on a certificate, which "shall be in writing and accompany the record of the deposition." Fed.R.Civ.P. 30(e); (f)(1). If the party or deponent properly requests review, the party or deponent may submit changes to his deposition within thirty days after being notified by the officer that the transcript is available for review. *Id.*

In the instant case, Plaintiff failed to supply us with an adequate record to determine whether Rule 30(e) authorized Dr. Stanton–Hicks' attempt to amend his deposition. Specifically, Plaintiff failed to include the certificate of the officer required by Rules 30(e) and 30(f)(1). Without the certificate, we can-

not tell whether Plaintiff or Dr. Stanton–Hicks requested review, an absolute prerequisite to amending or correcting a deposition under Rule 30(e). Further Plaintiff failed to inform us when "the deponent ... [was] notified by the officer that the transcript or recording ... [was] available" for review. Fed.R.Civ.P. 30(e). Without a specific date, we cannot determine whether Dr. Stanton–Hicks submitted the changes within the mandatory thirty day period.

■ The record does contain a letter from Plaintiff's attorney to Mizanin Reporting Service, Inc., dated February 3, 1994, which states:

This letter is to inform you that I received a call from Dr. Stanton–Hicks. He has been in and out of town at various seminars and symposiums and did not get his deposition until mid January. I am not clear as to the date that you actually forwarded his copy to him for review and signature, but I recall getting my copy in late December, 1993. Generally speaking, a deponent is to correct and sign his deposition within 30 days after receipt.

This letter is to inform you that Dr. Stanton–Hicks has indicated that he has just recently reviewed the deposition because of his busy traveling schedule but hopes to get a completed copy to you within the next 10 days. I am sending a copy of this letter to counsel involved in this matter so they may be properly advised.

Vol. I at 454. The record also contains a notarized document with Dr. Stanton–Hicks' signature, reflecting he reviewed his deposition and made corrections on February 10, 1994.

The letter's statement regarding "review and signature" combined with the notarized review statement of Dr. Stanton–Hicks' implies that Dr. Stanton–Hicks requested review of his deposition. Nonetheless, these documents do not provide the necessary information to ensure compliance with the procedural dictates of Rule 30(e). Without the certificate and the officer's notation, we cannot determine whether review was requested in accordance with Rule 30(e). Further, the record is unclear whether Dr. Stanton–Hicks submitted his changes to his deposition with-

in thirty days after being notified that the transcript was available for review. The record reflects that: (1) Dr. Stanton–Hicks' deposition was taken November 19, 1993; (2) Plaintiff's attorney received a copy of Dr. Stanton–Hicks' deposition in late December 1993; (3) because Dr. Stanton–Hicks was out of town, he "did not get his deposition until mid January;" and (4) Dr. Stanton–Hicks made corrections to his deposition on February 10, 1994. The record does not demonstrate the exact date Dr. Stanton–Hicks was notified his deposition was available for review. Thus, we simply cannot determine whether Dr. Stanton–Hicks submitted changes to his deposition within thirty days after notification. *See id.*

It is not this court's burden to hunt down the pertinent materials. Rather, it is Plaintiff's responsibility as the appellant to provide us with a proper record on appeal. Fed. R.App.P. 10(b)(2); *King,* 58 F.3d at 587. "The appellant must 'order and provide all portions of the transcript necessary to give the court of appeals a complete and accurate record of the proceedings insofar as such proceedings relate to the issues on appeal.'" *Id.* (quoting 10th Cir.R. 10.1). In sum, because Plaintiff failed to provide us with the portions of the record demonstrating compliance with Rule 30(e), we cannot determine whether Plaintiff established her right to submit the altered deposition portions, and we will not reverse the district court on an inadequate record.

■ We also conclude the district court did not abuse its discretion by refusing to allow Plaintiff to amend the pleadings under Rule 15(b) to include the issue of failure to diagnose. Defendant timely objected to the introduction of testimony at trial on the issue of failure to diagnose and there is nothing in the record indicating the parties tried the issue by express or implied consent. Moreover, we have already concluded the district court did not err in concluding that Plaintiff failed to raise a genuine issue of material fact as to her failure to diagnose claim. As a result, the court did not err in refusing to allow Plaintiff to amend the pleadings to assert the issue of failure to diagnose at trial. *See Franks,* 796 F.2d at 1238 n. 4 (district court did not abuse its discretion by refusing to allow plaintiff to amend complaint because

plaintiff did not raise a genuine issue of material fact with regard to the claims he sought to add).

AFFIRMED.