UNITED STATES COURT OF APPEALS

**Filed 2/27/96**TENTH CIRCUIT

LANADA S. ARNOLD,                          )
                                           )
    Plaintiff-Appellee,                )
                                           )
        v.                         )      No. 95-6123
                                           ) (D.C. No. CIV-94-512-M)
OKLAHOMA COUNTY BOARD OF COUNTY            )    (W. Dist. Okla.)
COMMISSIONERS; J.D. SHARP, in his official )
capacity as Oklahoma County Sheriff,       )
                                           )
    Defendants,                        )
                                           )
        and                        )
                                           )
J.D. SHARP, individually,                  )
                                           )
    Defendant-Appellant.               )

ORDER AND JUDGMENT[*]

Before BALDOCK, BRISCOE, and MURPHY, Circuit Judges.

J.D. Sharp, one of the defendants in this whistle-blower action brought pursuant to

42 U.S.C. § 1983, appeals the district court's denial of his motion for summary judgment,

in which he claimed he was entitled to qualified immunity. Plaintiff Lanada S. Arnold

filed the action claiming, in part, that she was retaliated against and effectively terminated

from her position as a pharmacist with the Oklahoma County Sheriff's Department

because of statements she made to the Oklahoma State Pharmacy Board.

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

I.  Factual background

Arnold is a registered pharmacist in Oklahoma.  Sharp is the Oklahoma County Sheriff.  In November 1991, Arnold applied for the position of pharmacist with the Oklahoma County Sheriff's Department.  She acknowledged by her signature to the employment application that she understood employment, if offered to her, "may be terminated by Oklahoma County at any time without liability for wages or salary except such as may have been earned at the time of such termination," and that "Oklahoma County [could] change wages, benefits, and conditions at any time."  Appellant's append. 4.  Arnold alleges that, during her initial interview with Sharp, she informed him the hours of the position (8:00 a.m. to 5:00 p.m.) were important to her, and that she could not work evenings because she had minor children.

Although not supported by any documentary evidence in the record on appeal, the parties acknowledge that Arnold was subsequently hired as a pharmacist.  According to Arnold, she was responsible for the management of a pharmacy located in the Oklahoma County Jail, and was required by the Pharmacist Rules of Professional Conduct to report any violations of pharmacy laws or regulations that came to her attention.  Arnold alleged that when she began her employment, the pharmacy was not in compliance with federal regulations relating to record and labeling/dispensing requirements.  Arnold took immediate steps to remedy these problems, but was met "with resistance and hostility by certain members" of the Sheriff's Department.  Appellees' suppl. append. 5.  Arnold notified her superiors of these hostilities, but "received additional resistance and hostility from [her] superiors and was threaten[ed] with termination."  Id.  In particular, she alleged that her superiors informed her they were "tired" of reading her memos

concerning problems in the pharmacy.  Id.

On April 24, 1993, defendants hired a substitute pharmacist employed by a local hospital to come to the jail pharmacy to work on an alleged backlog of sick call prescriptions that needed to be filled.  On April 26, 1993, Arnold returned to work and "discovered that a large amount of prescriptions had been filled in [her] absence and that the prescriptions were filled without documented physician authorization as required by federal and state law."  Appellees' suppl. append. 6.  Arnold contacted the State Pharmacy Board (Board) and reported her concerns.  According to defendant Sharp, the Board investigated Arnold's allegations and found no illegal or criminal activity in connection with the filling of prescriptions in the pharmacy.

Arnold alleged she was subsequently berated by Sharp for contacting the Board. In particular, Sharp called her a "loose cannon," and told her that if she contacted the Board again she would be fired.  On May 20, 1993, Sharp issued a memorandum to Arnold  stating that, in order to ensure "all medication be filled and distributed the same day it is ordered," he was changing the hours of the pharmacy, effective May 24, 1993, to 11:00 a.m. to 8:00 p.m.  Appellant's append. 52.  Sharp also informed Arnold she was being assigned to work under Sergeant Linda Lipscomb, a jail employee who, according to plaintiff, had actively resisted Arnold's efforts to implement necessary safeguards and procedures in the pharmacy.  On the day she received Sharp's memorandum, Arnold sent the following letter to Sharp:

> I HEREBY TENDER MY RESIGNATION FROM THE SHERIFF'S DEPT.
> DUE TO FAMILY PROBLEMS WITH WORKING FROM 11AM TO 8PM.
> THIS RESIGNATION WILL BE EFFECTIVE THE DAY THE NEW HOURS
> GO INTO EFFECT.  I CAN GIVE YOU TWO WEEKS IF YOU WANT TO
> DELAY THE NEW HOURS UNTIL THAT TIME PERIOD IS UP.

3

PLEASE, ADVISE IF YOU NEED THE TWO WEEKS NOTICE.

Appellant's append. 53.

Arnold alleged she became violently ill upon receipt of Sharp's memorandum, and was unable to return to work the following day because of the need to seek medical treatment. She informed her superiors of her illness and inability to work that same day. According to Arnold, Captain James Roush of the Sheriff's Department, at the direction of Sharp, informed her that, effective immediately, her services as jail pharmacist were no longer required. According to Arnold, Sharp has never fully implemented the proposed changes to the pharmacy hours, as the pharmacist who was hired to replace her does not work past 5:00 p.m.

## II. Procedural history

Arnold named as defendants the County of Oklahoma; the Board of County Commissioners of Oklahoma County; J.D. Sharp, individually and in his official capacity as Oklahoma County Sheriff; U.S. Biggers; James Rouse; "and other unknown persons, individually and in their official capacity as deputies, employees and agents of the Oklahoma County Sheriff." According to Sharp,

> [t]he basis for Plaintiff's lawsuit was her assertions that the defendants deprived her of her first amendment right to free speech in violation of title 42, section 1983 and that the defendants wrongfully discharged her in violation of the public policy of Oklahoma, by retaliating against her for whistleblowing and exercising her first amendment rights.

Appellant's br. 1. Sharp asserts Arnold voluntarily agreed to dismiss her claims against Biggers and Rouse, leaving only the County and Sharp as defendants. Sharp moved for summary judgment, which was denied. With respect to Arnold's § 1983 claim generally,

4

the district court concluded there was "a genuine dispute as to whether Arnold's interests in free speech outweighed Sharp's interests in taking the employment actions about which Arnold has complained." Attachment to appellant's br. 11. In rejecting Sharp's qualified immunity defense, the court held it was well established that an official acting under color of law could not materially alter another's employment conditions on a basis that infringes that person's constitutionally protected interest in freedom of speech, and found that Sharp's conduct could not be considered "objectively reasonable" in light of the clearly established law. Id. at 13. Specifically, the court found that "a reasonable supervisory employee should have been on notice that it would be a violation of the first amendment to materially and adversely alter the employment conditions of an employee because she complained as a whistleblower." Id. at 13-14.

III. Discussion

In challenging the denial of his summary judgment motion, Sharp raises three separate issues. First, he argues Arnold failed to produce specific evidence demonstrating that his actions in changing the hours of the pharmacy were improperly motivated (i.e., in retaliation for contacting the Board). Pointing to various items of his own evidence, Sharp asserts the changes in the hours were motivated by legitimate concerns, and there was no evidence indicating that he terminated or demoted Arnold after learning she contacted the Board. Second, Sharp asserts that, in light of this evidence indicating that his reasons for changing the pharmacy hours were legitimate, it was objectively reasonable for him to believe that his actions did not violate Arnold's constitutional rights. Third, Sharp contends the court ignored the holdings of Waters v. Churchill, 114

5

S.Ct. 1878 (1994). Specifically, Sharp argues under <u>Waters</u>, it would not have been unconstitutional for him to discharge Arnold in retaliation for contacting the Board because her reports to the Board ultimately proved to be incorrect. In addition, Sharp argues Arnold was an "at will" employee who, under <u>Waters</u>, had no right to assert a constitutional violation based on her termination.

We note at the outset that our review of this case was made more difficult than necessary because of appendix deficiencies. Even after additional pleadings were requested by the court at oral argument, the appendix as supplemented does not contain the complaint, Arnold's response to Sharp's motion for summary judgment, or Sharp's reply. It is the appellant's burden to provide the court with an adequate record. <u>See</u> <u>Rios v. Bigler</u>, 67 F. 3d 1543, 1553 (10th Cir. 1995). Further, Sharp has failed to comply with 10th Cir. R. 10.3.1, which indicates the appendix should include "the last amended complaint and answer," and 10.3.2(b), which indicates "[r]elevant portions of briefs, memoranda, affidavits, depositions, and other documents filed in support of, or in opposition to, a substantive motion--such as a summary judgment motion . . . should be included when the appeal is from an order granting or denying that motion." While clerical errors sometimes occur in the sending of the appendix[1], the appellant along with the appellee bear a responsibility to this court and to their clients to make certain that the full record necessary for our full and complete review of the decision challenged on appeal has in fact been sent to this court.

In reviewing a district court's denial of summary judgment on a qualified immunity

---

[1] We note the index to the supplemental appendix lists the complaint, but the complaint is not contained in the appendix as supplemented.

defense, this court follows the approach set forth in <u>Siegert v. Gilley</u>, 500 U.S. 226, 232 (1991), and determines (1) whether plaintiff has asserted the violation of a constitutional right, and (2) whether the constitutional right at issue was clearly established at the time of the incident in question. Here, Sharp does not specifically challenge the court's conclusions on either of these matters. Nonetheless, we will address these points to respond to Sharp's general contentions and to assist the district court in its final resolution of this case.

In <u>Moore v. City of Wynnewood</u>, 57 F. 3d 924 (10th Cir. 1995), this court outlined the three-step framework for analyzing free speech claims of public employees. A public employee must first "establish that the speech for which the employee alleges he or she was retaliated against is 'protected speech.'" <u>Id.</u> at 931. In order to establish that speech is protected, "the employee must show that: (1) the speech involves a matter of public concern and not merely a personal issue internal to the workplace . . . and (2) the employee's interest in the particular expression outweighs the government's interest in regulating such expression to maintain an efficient and effective workplace." <u>Id</u>. Assuming the employee is able to demonstrate the speech is protected, he or she must then "show that the speech was a substantial or motivating factor in the challenged governmental action(s)." <u>Id.</u> Finally, "the employer must be given an opportunity to show that it would have taken the same actions in the absence of the protected expression." <u>Id.</u> Normally, the last two steps of the three-step framework are resolved by the jury. <u>See</u> <u>Johnson v. Lincoln University</u>, 776 F. 2d 443, 454 (3d Cir. 1985) ("second and third questions . . . should be submitted to the jury").

Here, the court concluded Arnold's complaints to the Board "touched on a matter

of public concern" and there was "a genuine dispute as to whether Arnold's interests in free speech outweighed Sharp's interests in taking the employment actions about which Arnold has complained." Attachment to appellant's br. 9,11. In his appellate brief, Sharp states he "does not concede" that Arnold's speech was on a matter of public concern, but he fails to specifically challenge the court's conclusion to the contrary. Nor does Sharp appear to challenge the court's conclusion that there is a factual dispute as to whether Arnold's free speech interest outweighed his interest in regulating such speech in order to maintain an efficient and effective workplace.

Viewed in the light most favorable to Arnold, the evidence in the record on appeal indicates Arnold contacted the Board because she was concerned about potential violations of federal and state law. Such violations would appear to be matters of public concern because they indicate possible improper medical treatment of county jail inmates and because there is a public interest in ensuring that pharmacies are operated in accordance with federal and state regulations. Further, in contacting the Board with potential violations, Arnold was acting in accordance with the Rules of Professional Conduct governing registered pharmacists. Finally, although Sharp alleged Arnold's report to the Board "could cause serious disruption in the proper operation of the Detention Center," appellant's append. 48, these allegations are self-serving, speculative, and conclusory. See Moore, 57 F. 3d at 934 ("The government cannot rely on purely speculative allegations that certain statements caused or will cause disruption to justify the regulation of employee speech"). Although Sharp appears to suggest the report could have caused disruption among the inmates, he has not demonstrated that any of the inmates were even aware of Arnold's report to the Board.

8

The bulk of Sharp's attack on appeal is focused on the final two steps of the framework (i.e., whether Arnold adequately demonstrated her report was a substantial or motivating factor in the decision to change the hours of the pharmacy, and whether the same action would have been taken if she had not contacted the Board). As previously noted, these two steps are normally reserved for the jury and there is no indication the district court reached these issues in its written order denying Sharp's motion for summary judgment. Even assuming the court did reach these issues and decided that genuine issues of fact existed which precluded summary judgment, this court is without jurisdiction to entertain Sharp's challenge on such findings. See Johnson v. Jones, 115 S.Ct. 2151, 2169 (1995) (defendant asserting qualified immunity defense cannot immediately appeal "district court's judgment order insofar as that order determines whether or not the pretrial record sets forth a 'genuine' issue of fact for trial").

We turn to the question of whether the right at issue was clearly established. In Considine v. Board of County Comm'rs, 910 F.2d 695, 702 (10th Cir. 1990), this court noted that, "[i]n the First Amendment context, the Harlow inquiry must focus on whether, at the time the actions adverse to the employee-speaker were taken, the defendants would have been reasonably on notice that the speech at issue addressed a matter of public concern and that their interest in the effective functioning of their governmental enterprise would be insufficient for purposes of Pickering balancing to outweigh the employee's free speech interest." Here, the court concluded Arnold's report to the Board was a matter of public concern and that there was "a genuine dispute as to whether Arnold's interests in free speech outweighed Sharp's interests in taking the employment actions about which Arnold has complained." Attachment to appellant's br. 11. The court

9

also concluded the constitutional right asserted by Arnold was clearly established at the time of Sharp's alleged retaliation. Specifically, the court held that "a reasonable supervisory employee should have been on notice that it would be a violation of the first amendment to materially and adversely alter the employment conditions of an employee because she complained as a whistleblower." Attachment to appellant's br. 13-14.

Sharp does not specifically challenge the district court's conclusions regarding whether the right at issue was clearly established. Instead, he simply contends his actions were reasonable notwithstanding clearly established law. Again, however, it is questionable whether this court has jurisdiction to resolve this issue because there is no indication it was raised before or resolved by the district court. In any event, the record on appeal does not support Sharp's contention. There are sufficient facts to allow reasonable jurors to conclude it was objectively unreasonable for Sharp to believe his actions did not violate an established federally protected right. See Ying Jing Gan v. City of New York, 996 F. 2d 522, 532 (2d Cir. 1993).

As regards Sharp's third issue, we reject Sharp's contention that the district court ignored the Supreme Court's holdings in Waters. In Waters, a four-justice plurality held that a governmental employer could fire an employee for disruptive speech based on the employer's reasonable belief of what the employee said, regardless of what was actually said. 114 S.Ct. at 1889. Thus, although Waters protects a governmental employer whose reasonable belief of what an employee said eventually turns out to be incorrect, it does not, as suggested by Sharp, require a whistle-blowing employee to always be "correct" or face the prospect of discharge. As for Sharp's suggestion that Arnold's purported at-will

status[2] precludes her from bringing this action, he is incorrect. Although the plurality in Waters suggested, in passing, that an at-will government employee generally has no constitutional property interest in her job, id. at 1890; see also Luck v. Mazzone, 52 F.3d 475, 477 (2d Cir. 1995), the plurality clearly did not intend to preclude such an employee's right to protect her free speech rights. This much is evident from the remainder of the plurality's opinion.

IV. Conclusion

The district court's order denying Sharp's motion for summary judgment in which he claimed he was entitled to qualified immunity is AFFIRMED.

Entered for the Court

Mary Beck Briscoe
Circuit Judge

---

[2] There is no indication that the district court made any findings with respect to plaintiff's employment status.

11