**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**819.98 ACRES OF LAND, MORE OR LESS, LOCATED IN WASATCH AND SUMMIT COUNTIES, State of UTAH; State of Utah, Defendants,**

and

**Stichting Mayflower Recreational Fonds; Stichting Mayflower Mountain Fonds, Defendants–Appellants,**

**Gladys E. Olson Trust, Russell E. Neihart, Consolidated Defendants–Appellees.**

No. 94–4268.

United States Court of Appeals, Tenth Circuit.

March 4, 1996.

Lisa E. Jones, Attorney, Department of Justice, Washington, D.C., (Lois J. Schiffer, Assistant Attorney General, Donald F. Rosendorf, Robert L. Klarquist, Albert M. Ferlo, Jr., Attorneys, Department of Justice, Washington, D.C., Scott M. Matheson, Jr., United States Attorney, Stephen Ross and Stephen Sorenson, Assistant United States Attorneys, Salt Lake City, Utah, on the brief), for Plaintiff–Appellee.

E. Craig Smay, Salt Lake City, Utah for Defendants–Appellants.

B. Lloyd Poelman, Kirton & McConkie, Salt Lake City, Utah for Consolidated Defendants–Appellees.

Before BALDOCK, EBEL, and BRISCOE, Circuit Judges.

BALDOCK, Circuit Judge.

This appeal arises from a condemnation action. Defendants Stichting Mayflower Recreational Fonds and Stichting Mayflower Mountain Fonds ("Stichting Mayflower") appeal from a judgment entered on a jury verdict awarding them compensation for land taken by the United States. Stichting Mayflower argues the district court erred in instructing the jury regarding the valuation of the property taken, and erroneously allocated the condemnation award between Stichting Mayflower and an adjacent condemnee. We exercise jurisdiction under 28 U.S.C. § 1291 and affirm.

I.

The government condemned 1,188.38 acres of land for use in the Jordanelle Lake and Dam project in Summit and Wasatch Counties, Utah. Two separate entities owned the land: Stichting Mayflower owned 819.98 acres, and the estate of Gladys E. Olson Trust and Russell Neihart ("Olson–Neihart") owned a smaller parcel consisting of 368.40 acres. The 1,188.38 acres were part of a tract of approximately 2500 acres that Stichting Mayflower and Olson–Neihart had agreed to develop jointly as the Mayflower Mountain Resort. The proposed resort was to include residential, commercial, and hotel

facilities, and a ski lift to link Mayflower Mountain to the adjacent Deer Valley Ski Area.

The government deposited $1,380,000 with the district court as estimated just compensation on July 10, 1987. Stichting Mayflower and Olson–Neihart contested the value of the property. Consequently, the district court conducted a jury trial in May 1994 to determine just compensation for the taking. Stichting Mayflower and Olson–Neihart presented ten witnesses during the seven-day trial. Two experts—Elliot R. Travis and William T. Van Court—delivered opinion testimony for the landowners regarding the value of the property taken. Mr. Travis, who was not a real estate appraiser, testified that the property taken was worth approximately $24,000,000 using a discounted cash flow analysis, also known as the capitalized income approach. Mr. Van Court, a real estate appraiser, testified that the property taken was worth approximately $9,800,000 using a comparable sales approach. Finally, Russell Neihart, one of the owners of the property, testified that the fair market value of the property at the time of the taking was $24,000,000.

The government offered testimony from five witnesses, including Bryce Clinger, a real estate appraiser. Mr. Clinger testified that the property taken was worth $2,587,000 using a comparable sales approach.

Over the objection of Stichting Mayflower and Olson–Neihart, the district court delivered the following instructions to the jury regarding property valuation:

### Instruction No. 48

The law is not wedded to any particular formula or method for determining fair market value as the measure of just compensation. Ordinarily, if there are sales of comparable property at or near the time the condemned property is taken, evidence in regard to such sales would be more appropriate than any other method in determining the market value of the property taken. However, if there are no compara-

ble sales, then other methods must be resorted to in order to ascertain market value.

The district court further instructed the jury regarding the comparable sales approach:

### Instruction No. 45

Sales of comparable properties in the same time period may be the basis for an opinion of the value of condemned land. The properties, however, must be truly comparable, or data regarding their sales must be ignored. "Comparable" does not mean "identical;" it does mean that the properties are potentially developable. Unless you find that a property is in fact comparable to the property condemned, or that its comparability can be expertly adjusted to show relative value, you shall ignore data regarding the sale of that property in arriving at a conclusion about the value of the property condemned.

The jury delivered its verdict using a special verdict form. The jury determined that the entire property (2,475 acres) was worth $15,005,000 prior to condemnation by the government, and the property remaining after the taking was worth $7,595,000. Consequently, the jury set the just compensation for the 1,188.38 acres of land taken at $7,410,000.

In a December 1, 1994 order, the district court allocated the condemnation award between Stichting Mayflower and Olson–Neihart based on their proportionate ownership of the land taken. Thus, the district court allocated Stichting Mayflower 68.82% of the condemnation award because it owned 819.98 acres of the 1188.38 acres, and awarded Olson–Neihart 31.18% of the verdict because it owned 368.40 acres of the total. Stichting Mayflower appealed.

## II.

On appeal, Stichting Mayflower argues the district court erroneously: (1) instructed the jury regarding the valuation of the property taken, and (2) allocated the condemnation award between itself and Olson–Neihart.[1]

---

1. Stichting Mayflower also asserts that it is entitled to attorneys' fees under the Equal Access to·

Justice Act ("EAJA"), 28 U.S.C. § 2412, for a portion of the action below where it successfully

We address Stichting Mayflower's arguments in turn.

### A.

Stichting Mayflower first contends the district court erroneously instructed the jury on the valuation of the property. Instructions No. 48 and 45, according to Mayflower, required the jury to exclude the $24,000,000 capitalized income valuation attested to by Mr. Travis. Specifically, Stichting Mayflower argues that Instruction No. 48 misstated the law and informed the jury that they could not consider the capitalized income valuation, unless they found that there were no comparable sales at all. Stichting Mayflower claims that Instruction No. 45 then set forth a definition of comparable sales that was one of "minimal comparability" as opposed to "strict comparability." Aplt.Br. at 10. Because comparable sales were defined so loosely, Stichting Mayflower asserts, the challenged instructions "required the jury, unless they found no minimally comparable sale in evidence, to exclude the capitalized income evidence as 'inappropriate.'" Aplt. Br. at 6. Stichting Mayflower maintains that the $7,410,000 condemnation award demonstrates that the jury excluded from consideration the $24,000,000 capitalized income valuation delivered by Mr. Travis, and selected as most credible the $9,800,000 comparable sales appraisal offered by Mr. Van Court. In sum, Stichting Mayflower contends the district court should have instructed the jury "that the sales available in this case were not fully comparable; therefore it was necessary to consider capitalized income evidence; and that the jury should give such weight as it found appropriate to the evidence admitted." Aplt.Br. at 17.

■ We review jury instructions de novo to determine whether, as a whole, the instructions correctly state the governing law and provide the jury with an ample understanding of the issues and applicable standards. *E.g., Rios v. Bigler,* 67 F.3d 1543, 1549 (10th Cir.1995). An instruction need not be faultless in every respect. *See id.* We will disturb a judgment only if we have a substantial doubt whether the jury was fairly guided in its deliberations. *E.g. Getter v. Wal–Mart Stores, Inc.,* 66 F.3d 1119, 1125 (10th Cir.1995).

■ In this circuit, "[t]he best evidence of market value of real property in condemnation is, of course, found in sales of comparable land within a reasonable time before the taking." *United States v. 179.26 Acres of Land,* 644 F.2d 367, 371 (10th Cir.1981); accord *United States v. 10,031.98 Acres of Land,* 850 F.2d 634, 641 (10th Cir.1988); *United States v. 2,560.00 Acres of Land,* 836 F.2d 498, 502 n. 2 (10th Cir.1988); *United States v. 25.02 Acres of Land,* 495 F.2d 1398, 1400 (10th Cir.1974). Comparability is a question of fact, and the district court may exercise broad discretion in determining the admissibility of evidence of comparable sales. *United States v. 45,131.44 Acres of Land,* 483 F.2d 569, 571 (10th Cir.1973). Although comparable sales offer the "best evidence of market value," we have observed "that the law is not wedded to any particular formula or method for determining fair market value as the measure of just compensation." *Sill Corp. v. United States,* 343 F.2d 411, 416 (10th Cir.), *cert. denied,* 382 U.S. 840, 86 S.Ct. 88, 15 L.Ed.2d 81 (1965). Thus, in the absence of comparable sales, other methods of valuation—such as the capitalized income approach—may be appropriate to determine the market value of condemned property. *2,560.00 Acres of Land,* 836 F.2d at 504; *179.26 Acres of Land,* 644 F.2d at 372.

compelled the government to release to Stichting Mayflower and Olson–Neihart the deposit of just compensation that the government deposited into an escrow account. Mayflower, however, has failed to submit an application for fees with this court or the district court as required by the statute. *See* 28 U.S.C. § 2412(d)(1)(B) ("A party seeking an award of fees ... *shall* within thirty days of final judgment in the action, *submit to the court an application for fees* and other expenses which shows that the party is a prevailing party ... the amount sought, including an itemized statement from any attorney or expert witness ... stating the actual time expended and the rate at which fees and other expenses were computed.") (emphasis added); *see also Myers v. Sullivan,* 916 F.2d 659, 666 (11th Cir.1990) (recognizing that the statutory requirement that a claimant under EAJA file timely application for fees "is jurisdictional in nature"). Consequently, we do not address Mayflower's argument that it is entitled to attorneys' fees under EAJA.

■ Viewing Instructions No. 48 and 45 against these governing principles of property valuation, we conclude the challenged instructions neither misstated the law nor failed to provide the jury with an ample understanding of the applicable standards. Instruction No. 48 did not direct the jury to exclude the capitalized income valuation, as Stichting Mayflower suggests. Instead, Instruction No. 48 stated that "[t]he law is not wedded to any particular formula or method for determining fair market value as the measure of just compensation." Instruction No. 48 informed the jury that "sales of comparable property ... would be more appropriate than any other method." Clearly, comparable sales, if available, offer the best evidence of market value and are therefore, as Instruction No. 48 informed the jury, "more appropriate than any other method." *E.g., 2,560.00 Acres of Land,* 836 F.2d at 502 n. 2. Instruction No. 48 also advised the jury that "if there are no comparable sales, then other methods must be resorted to in order to ascertain market value." Our precedent instructs that "when lacking evidence of comparable sales, other evidence in support of other methods of valuation may be sufficient for determination of value." *179.26 Acres of Land,* 644 F.2d at 372. We therefore reject Mayflower's argument that Instruction No. 48 misstated the law.

■ We also reject Mayflower's argument that Instruction No. 45 erroneously set forth a "minimal comparability" definition of comparable sales as opposed to a "strict comparability" definition. Instruction No. 45 did not loosely define comparable sales, but apprised the jury that "properties ... must be truly comparable, or data regarding their sales must be ignored." The challenged instruction provided, "[u]nless you find that a property is in fact comparable to the property condemned, or that its comparability can be expertly adjusted to show relative value, you shall ignore data regarding the sale of that property." Instruction No. 46 further narrowed the definition of comparable sales:

Sales are not comparable, however, merely because an appraiser says that

they are. Before such an opinion may be accepted by you as evidence of the value of the land condemned in this matter, the party offering the opinion must prove by a preponderance of evidence that the sales compared were of lands similar in locality, quality, character and usefulness to the land condemned.

You should examine carefully each sale offered in support of an opinion of value. *Unless you are satisfied as to each element of similarity—locale, quality, character and usefulness—you should reject the sale and the opinion based upon it.* Aplt.App. at Tab 8 (emphasis added). Thus, Instructions No. 45 and 46 directed the jury to "ignore" or "reject" evidence of comparable sales, unless it concluded that the sales were "truly comparable" and that all the elements of comparability were similar. The district court did not therefore mislead the jury by delivering a "minimal comparability" definition of comparable sales.

■ We also reject Mayflower's contention that the district court should have instructed the jury "that the sales available in this case were not fully comparable; therefore it was necessary to consider capitalized income evidence; and that the jury should give weight as it found appropriate to the evidence admitted." Aplt.Br. at 6. Comparability is a question of fact suitable for determination by the jury, and the court may exercise broad discretion in determining the admissibility of evidence of comparable sales. *See 45,131.44 Acres of Land,* 483 F.2d at 571. A dissimilarity between sales of property proffered as comparable sales and the property involved in the condemnation action goes to the weight, rather than to the admissibility of the evidence of comparable sales. *See id.* at 572. Consequently, the proposed instruction raised by Stichting Mayflower misapprehends that once the district court admitted the evidence of comparable sales in the instant case, the jury as the trier of fact, and not the court, was required to determine whether the sales relied on by the experts were truly comparable.[2] In sum, we do not have a substantial doubt that Instructions

---

**2.** Stichting Mayflower has not appealed the district court's admission of the evidence of comparable sales relied on by Mr. Clinger.

No. 48 and 45 fairly guided the jury in its deliberations. We therefore reject Mayflower's argument that the district court erroneously instructed the jury.

### B.

Finally, Stichting Mayflower asserts the district court erred in allocating the condemnation award between itself and Olson–Neihart. Specifically, Stichting Mayflower argues that the district court erroneously concluded that Olson–Neihart was not obligated to contribute additional amounts to offset the nearly $3,000,000 in development and planning costs that Stichting Mayflower had expended in planning the proposed Mayflower Mountain Resort. We disagree.

Stichting Mayflower and Olson–Neihart agreed to develop Mayflower Mountain Resort pursuant to a joint planning agreement dated September 1, 1983 ("the agreement"). Paragraph two of the agreement required Olson–Neihart to contribute $75,000 for development and planning costs. The agreement did not require Olson–Neihart to contribute additional amounts. Stichting Mayflower expended approximately $3,000,000 in development and planning costs. Olson–Neihart paid the $75,000 specified in the agreement.

The jury awarded the condemnation award of $7,410,000 to Stichting Mayflower and Olson–Neihart jointly. The district court allocated the condemnation award between Stichting Mayflower and Olson–Neihart based on their proportionate ownership of the land taken. Thus, the district court allocated Stichting Mayflower 68.82% of the award because it owned 819.98 acres of the 1188.38 acres, and awarded Olson–Neihart 31.18% of the verdict because it owned 368.40 acres of the land taken. In so doing, the district court rejected Stichting Mayflower's argument that Olson–Neihart was legally obligated to pay planning and development costs beyond the $75,000 specified in the agreement:

> Claims by the Mayflower Stichtings for a 16.32% contribution from Olson/Neihart toward other planning and development costs relating to the Mayflower Project, which is resisted and denied by Olson/Neihart to be owing, are found to be governed by the terms of the aforesaid Agreement

dated September 1, 1983. The Court finds said Agreement contains no provision for contribution or reimbursement by Olson/Neihart for such other planning and development costs and is unambiguous in this respect. The Court further finds that said Agreement by its own language is an integrated agreement with respect to the subject of the parties' duties and liabilities relative to the Mayflower Project and that it has not been amended by written agreement signed by all parties thereto, as would be specifically required by its terms in order to modify the Agreement. *Accordingly, the Court concludes as a matter of law that Olson/Neihart is not liable for contribution to such other planning and development expenses.*

Aplt.App. at Tab 15 (emphasis added). We agree with the analysis of the district court. The agreement unambiguously limited Olson–Neihart's obligation to share in the development and planning costs of Mayflower Mountain Resort to $75,000. Olson–Neihart contributed $75,000. Hence, we reject Stichting Mayflower's argument that Olson–Neihart was legally obligated to pay development costs beyond the $75,000 specified in the agreement. We therefore hold that the district court did not err in allocating the condemnation award between Stichting Mayflower and Olson–Neihart.

AFFIRMED.