**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**November 28, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

JOHN VIGIL,

      Plaintiff-Appellant,

v.

CITY OF ALBUQUERQUE;
SANDRA DOYLE, individually and in
her official capacity,

      Defendants-Appellees.

No. 05-2301
(D. N.M.)
(D.Ct. No. CIV-04-726 LFG/RHS)

---

**ORDER AND JUDGMENT**[*]

---

Before **MURPHY**, Circuit Judge, **BRORBY**, Senior Circuit Judge, and
**TYMKOVICH**, Circuit Judge.

---

Appellant John Vigil appeals the district court's grant of summary

judgment in favor of Appellee, the City of Albuquerque ("the City") on

discrimination claims arising under Title VII of the Civil Rights Act of 1964, as

amended, 42 U.S.C. §§ 2000e to 2000h-6, as well as claims filed pursuant to the

City's Merit System Ordinance and Personnel Rules and Regulations for breach of

---

[*] This order and judgment is not binding precedent except under the doctrines of
law of the case, *res judicata* and collateral estoppel. The court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 36.3.

contract and good faith and fair dealing and the New Mexico Human Rights Act. The crux of Mr. Vigil's civil rights discrimination suit centers on his claim of disparate treatment on the basis of gender and race or national origin when the City passed him over for a position in favor of a non-minority female employee.[1] We exercise discretion under 28 U.S.C. § 1291 and affirm summary judgment in favor of the Defendants-Appellees.

## I. Factual Background

The district court based its summary judgment determination on Mr. Vigil's affidavit, deposition and attachments; Sandra Doyle's affidavit, supplemental affidavit and attachments; and Judy Montoya's affidavit and attachments, construing them in the light most favorable to Mr. Vigil as the party opposing summary judgment.[2] Many of the relevant facts are mainly undisputed, with the

---

[1] In his complaint, Mr. Vigil also alleged discrimination concerning the same Purchasing Officer position which in 2002 was awarded to another male candidate promoted over Mr. Vigil; eventually, the position opened up again, leading to the instant discrimination dispute in which Mr. Vigil again unsuccessfully applied for the same position a year later in 2003. Because he does not appeal the 2002 claim, we address only his claim concerning the 2003 award of the same position to a non-Hispanic, female candidate.

[2] Mr. Vigil did not furnish a copy of his deposition, the affidavit of Ms. Montoya, the complaint, or any excerpts therefrom as part of the record on appeal. We remind counsel that it is the appellant's responsibility to provide us with a proper record on appeal, and if the appellant's appendix is insufficient to permit assessment of claims of error, we must affirm. *See Scott v. Hern*, 216 F.3d 897, 912 (10th Cir. 2000)*; Rios v. Bigler*, 67 F.3d 1543, 1553 (10th Cir. 1995) (citing Fed. R. App. P. 10(b)(2)). However, in this case, because the district court's opinion and other pleadings sufficiently

exception of certain facts which the district court either found immaterial to its summary judgment determination or which Mr. Vigil generally alleged, but are not supported in the record, as addressed hereafter.

To begin, Mr. Vigil is a Hispanic male who, at the time in question, worked for the City as an Internal Services Supervisor.[3] The Internal Services Section is a part of the Purchasing Division and provides materials management in addition to procurement and purchasing functions. Mr. Vigil's job included management of the Internal Services Section, including the warehouse; acquisition of bids, goods and services for supply distribution; and overseeing the budget. In his position as Internal Services Supervisor, Mr. Vigil was responsible for a $1 million budget; $1.5 million in warehouse inventory; and $5 million in procurement contracts, including printing and copying contracts and all rolling stock such as forklifts, vehicles, equipment, fixtures, and facilities.

While another component of Mr. Vigil's job included management of the Office Services Section located at City Hall, he spent the majority of his time at

_____

characterize or reference the contents of those documents, we can proceed to assess the merits of Mr. Vigil's appeal.

[3] Prior to working as an Internal Services Supervisor, Mr. Vigil was a senior buyer for the City for six years and did purchasing for the City warehouse; before that, he was a warehouseman for two years where he drove, loaded trucks, filled orders, and was a member of certain committees.

the City warehouse – a site far removed from City Hall.  Management of the Office Services Section accounted for approximately twenty percent of his assigned duties, which included a weekly meeting and time conducting staff training and implementing new processes.  On occasion, in the absence of the Purchasing Officer, Mr. Vigil also served as Acting Purchasing Officer, which gave him "Delegation of Signature Authority," granting him full operational control of the Purchasing Division.

In March 2003, Mr. Vigil applied for the position of City Purchasing Officer.  Another in-house candidate, Deena Noonan, a non-minority female, also applied for the job and was ultimately chosen.  The job announcement for the position of Purchasing Officer gave the following "General Statement of Duties":

> To plan, direct, manage and oversee the activities and operations of the central purchasing office of the Department of Finance and Administrative Services including purchasing, warehousing and office services activities; to coordinate assigned activities with other divisions, departments and outside agencies; and to provide highly responsible and complex administrative support to the Finance Director.

R., App. at 32, 144.  Requirements also included a bachelor's degree with major course work in business administration, public administration or a related field, plus "*eight (8) years of central purchasing and materials management experience to include five (5) years in a direct supervisory and/or administrative capacity.*"  *Id*. (emphasis added).  The City intended or interpreted this statement to mean

that the position required "a *total* of eight years of experience in central purchasing and/or materials management" and such an interpretation was "applied to all applicants equally." R., App. at 33, 49-50 (¶ 22) (emphasis added).

A comparison of Mr. Vigil's and Ms. Noonan's applications reveal they possessed the same level of education – a bachelor's degree from the University of New Mexico, and both served as Internal Services Supervisors. While Ms. Noonan worked in that position for almost two years, Mr. Vigil held his position for close to eight years. However, Ms. Noonan previously performed central purchasing functions in other positions for over twelve years.

According to Sandra Doyle, the Director of Finance and Administrative Services for the City, the Human Resources Department first found both Ms. Noonan and Mr. Vigil qualified for the position. Next, a panel of six interviewers, consisting of two Hispanic males, one female and three Caucasian males, ranked Ms. Noonan at the top and recommended her for the position. Thereafter, Ms. Doyle accepted the panel's recommendation and promoted Ms. Noonan. Ms. Doyle, who previously served in the position of Purchasing Officer, believed Mr. Vigil was "minimally, but not the best, qualified for the position because he had no central purchasing experience." R., App. at 25, 150 (¶ 7). Instead, Ms. Doyle indicated Ms. Noonan was the best qualified for the position,

pointing out Ms. Noonan performed central purchasing functions for approximately twelve and one-half years and participated in purchasing operations in the amount of $250 million while assigned to the Public Works Department, the City's largest department, where she handled large accounts, including one in which she developed and managed a new contracting process.

In addition, although Ms. Noonan and Mr. Vigil both served as Acting Purchasing Officer for several days at a time, Ms. Doyle pointed out Ms. Noonan performed all of the assigned duties, while Mr. Vigil remained at the warehouse and delegated many of the required Purchasing Officer duties to Ms. Noonan. Ms. Doyle also noted Mr. Vigil's experience, while extensive, consisted primarily of inventory purchasing, which is "substantially different" from the central purchasing functions Ms. Noonan carried out. R., App. at 25, 152 (¶ 13). She stated Mr. Vigil's experience centered on procuring warehouse supplies and that, in contrast to Ms. Noonan, he did not demonstrate an ability to engage in the decision making processes necessary for the central purchasing function. Specifically, Ms. Doyle stated:

> Central purchasing involves the decision making process of how to purchase in response to a purchase request. Decisions must be made as to whether a request for proposals, bid or sole source proceeding is the best method for acquiring what is being requested. The Purchasing Officer interacts with the city attorney to ensure that legal decisions are being made. The warehouse inventory function is one small piece of the purchasing process. Warehouse purchasing

-6-

requires primarily ordering supplies, includes making procurement decisions on a very limited basis, and involves no or only minimal interaction with the legal process.

R., App. at 25-26, 152 (¶ 14).

In addition, Ms. Doyle explained the Purchasing Officer is involved in the political process at City Hall, so the position requires political skills. In that regard, she noted Ms. Noonan attended City Council meetings routinely, was well known to City Councilors and others at City Hall, and made herself available to assist Ms. Doyle when needed because of her proximity and willingness to provide assistance. In contrast, she stated Mr. Vigil remained mostly at the warehouse where he was not immediately available for assistance when needed, did not offer assistance during periods when the Purchasing Officer position was vacant, and had no involvement in the political process.

As further support for Ms. Noonan's selection for the position, Ms. Doyle explained she considered and compared Mr. Vigil's job description duties in his application with those described in Ms. Noonan's application. At that time, Ms. Noonan was responsible for all aspects of $95 million in budgeting for the Public Works Department, which has a substantially larger budget than Mr. Vigil's warehouse budget of $1 million. Ms. Noonan was also responsible for oversight and review of purchasing functions for compliance with City purchasing

regulations, and performed each of the tasks and responsibilities performed by the Central Purchasing Program as specified in the City's approved budget. In addition, she performed materials management while at the Water Department where she was responsible for purchasing materials such as water meters. Based on all of these considerations, Ms. Doyle determined Ms. Noonan was best qualified for the Purchasing Officer position, regardless of her national origin and gender.

## II. Procedural Background

Following Ms. Noonan's selection for the position, Mr. Vigil filed suit in federal court under Title VII of the Civil Rights Act on grounds he received disparate treatment on the basis of age, and race or origin. Following briefing on the City's motion for summary judgment, the district court granted summary judgment in favor of the City and against Mr. Vigil for the reasons articulated hereafter. This appeal followed, in which Mr. Vigil raises many of the same contentions comprehensively addressed by the district court in its summary judgment decision. In addition, Mr. Vigil contends the district court misunderstood one of his arguments on why Ms. Noonan was not qualified for promotion to the position of Purchasing Officer. Specifically, he asserts the district court incorrectly perceived his argument to be that the posted announcement, requiring applicants to have "eight (8) years of central purchasing

and materials management experience," meant the position required *both* eight years of central purchasing experience *plus* eight years of materials management experience. R., App. at 32; Apt. Br. at 5 (emphasis added). Instead, Mr. Vigil says his argument was that the eight years of experience required both materials management and purchasing experience, and Ms. Noonan was unqualified because she lacked sufficient materials management experience.

## III. Discussion

### A. Standard of Review and Discrimination Law

In articulating the standard of review and applicable discrimination law, we rely largely on our decision in *Jaramillo v. Colo. Jud. Dep't*, 427 F.3d 1303 (10th Cir. 2005) (*en banc*) (*per curiam*). We review *de novo* the district court's summary judgment decision, and "consider the evidence in the light most favorable to the nonmoving party, drawing all reasonable inferences from the available underlying facts." *Id.* at 1307. Summary judgment is appropriate if the record shows "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In reviewing summary judgment motions, movants for summary judgment bear the initial burden of demonstrating the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *See Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th Cir. 1998).

If this initial burden is carried, the nonmovant may not rest solely on his pleadings, but must set out specific facts in support of his claims, by reference to affidavits, deposition transcripts, or other exhibits incorporated therein. *Id.* at 671. While we view the evidence and draw inferences in the light most favorable to the non-moving party, that party must identify sufficient evidence which would require submission of the case to a jury. *See id.* at 671-72 and n.1. We have repeatedly held that even when an affidavit is based on personal knowledge and sworn, it may be insufficient to create a triable issue of fact if it is nonspecific or otherwise nonresponsive, vague, conclusory, or self-serving. *See Salguero v. City of Clovis*, 366 F.3d 1168, 1177 n.4 (10th Cir. 2004); *Garrett v. Hewlett-Packard Co.,* 305 F.3d 1210, 1213 (10th Cir. 2002); *Adler*, 144 F.3d at 671-72 and n.1; *Murray v. City of Sapulpa*, 45 F.3d 1417, 1422 (10th Cir. 1995).

To prevail on a disparate treatment claim under Title VII of the Civil Rights Act, the employee must show the employer intentionally discriminated against him for a reason prohibited by the Act. *Jaramillo,* 427 F.3d at 1306. If, as here, the employee relies on circumstantial evidence, "we apply the burden-shifting framework outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 ... (1973)." *Id.* "[T]he three-part *McDonnell Douglas* burden-shifting analysis is limited to the summary judgment context." *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1226 (10th Cir. 2000). Under *McDonnell*, the employee

must establish a prima facie case of discrimination by showing: "(1) he is a member of a protected class; (2) he applied for and was qualified for the particular position; (3) he was not promoted despite his qualifications; and (4) the position was filled or remained open after he was rejected." *Jaramillo,* 427 F.3d at 1306-07 (quotation marks and citation omitted). This three-part burden-shifting analysis is modified when, as here, a male alleges gender or reverse discrimination. *See Notari v. Denver Water Dep't*, 971 F.2d 585, 588-89 (10th Cir. 1992). We have held that in such cases, in lieu of showing that one belongs to a protected group, he or she must "establish background circumstances that support an inference that the defendant is one of those unusual employers who discriminates against the majority." *Id.*

If the employee establishes a prima facie case, then "a presumption of discrimination arises" resulting in the burden shifting to the employer "to articulate a legitimate, non-discriminatory reason for the adverse employment action." *Jaramillo,* 427 F.3d at 1307. If the employer "carries its burden of production, the presumption of discrimination drops out of the case," and "[t]he burden then shifts back to the [employee], who must prove by a preponderance of the evidence that the employer's reasons are a pretext for unlawful discrimination." *Id.*

An employee like Mr. Vigil can demonstrate pretext "by producing evidence of such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Id.* at 1308 (quotation marks and citation omitted). We have said "[e]vidence of pretext may include prior treatment of [the employee]; the employer's policy and practice regarding minority employment (including statistical data); disturbing procedural irregularities (e.g., falsifying or manipulating ... criteria); and the use of subjective criteria." *Id.* (quotation marks and citation omitted). In so doing, we have proceeded with caution in considering the relative merits of individual employees, given this court "may not act as a super personnel department that second guesses employers' business judgments." *Id.* (quotation marks and citation omitted). We have explained "minor differences between [an employee's] qualifications and those of a successful applicant are not sufficient to show pretext," and instead "the disparity in qualifications must be 'overwhelming.'" *Id.* at 1308-09 (citations omitted). Generally, "an employee must proffer evidence that shows each of the employer's justifications are pretextual."[4] *Id.* at 1309-10 (quotation marks and citations omitted). In making a

---

[4] As an exception, we have said that sometimes "a successful attack on part of the employer's legitimate, non-discriminatory explanation is enough to survive summary judgment even if one or more of the proffered reasons has not been discredited."

-12-

pretext determination, a court looks at the facts as they appeared to the person making the employment decision, *see Kendrick.*, 220 F.3d at 1231, because it is the employer's "'perception that is relevant, not the [employee's] subjective evaluation of his own relative performance.'" *Kelley v. Goodyear Tire & Rubber Co.*, 220 F.3d 1174, 1177-78 (10th Cir. 2000) (quoting *Furr v. Seagate Tech, Inc.*, 82 F.3d 980, 988 (10th Cir. 1996)).

## B. Discrimination Claim

Having considered the applicable standards of review and legal principles, we turn to the district court's decision, which is extremely thorough, well-articulated, and well-reasoned. For judicial economy, we find it unnecessary to recount it in its entirety and provide instead a summary sufficient to explain our affirmance.

---

*Jaramillo*, 427 F.3d at 1310. Instances sufficient to create a genuine issue of fact occur when:

> (1) the reasons are so intertwined that a showing of pretext as to one raises a genuine question whether the remaining reason is valid; (2) the pretextual character of one explanation is so fishy and suspicious that a jury could find that the employer (or its decisionmaker) lacks all credibility; (3) the employer offers a plethora of reasons, and the [employee] raises substantial doubt about a number of them; (4) the [employee] discredits each of the employer's objective explanations, leaving only subjective reasons to justify its decision; or (5) the employer has changed its explanation under circumstances that suggest dishonesty or bad faith.

*Id.* (quotation marks and citations omitted). None of these circumstances have been demonstrated in this case.

-13-

In ruling in favor of the City, the district court first determined Mr. Vigil failed to meet his burden of proof on his claim of gender bias in a reverse discrimination claim. We agree. As the district court explained, the fact the hiring officer was female and hired a female applicant over a male is insufficient to meet Mr. Vigil's burden. However, because Mr. Vigil also brought a claim of national origin discrimination, the district court proceeded to a full *McDonnell Douglas* analysis and determined that even if Mr. Vigil stated a prima facie case of discrimination, the City provided legitimate, non-discriminatory reasons for its selection of Ms. Noonan over Mr. Vigil for the position of Purchasing Officer. We agree. First, even if the district court misinterpreted Mr. Vigil's argument that the position required eight years of central purchasing experience plus eight years of materials management experience, it essentially concluded neither Mr. Vigil nor Ms. Noonan would have been qualified under that interpretation, and that the City's actual interpretation of the requirement – that the applicant possess a total of eight years of central purchasing and materials management experience – was applied equally to both candidates.

Next, with respect to Mr. Vigil's claim Ms. Noonan lacked materials management experience, Ms. Doyle clearly explained Ms. Noonan performed materials management while at the Water Department, and, as the district court explained, she was responsible for all aspects of budgeting for the Public Works

-14-

Department, so Mr. Vigil's otherwise unsupported statements she lacked certain materials or fiscal management and budget experience did not raise an issue of fact.

With respect to the issue of central purchasing experience, the district court also explained in great detail that Ms. Noonan had much more experience in performing central purchasing functions than Mr. Vigil, whose experience was primarily in materials management, with only approximately twenty percent of his time spent in Office Services functions. Our review of the vacancy announcement and record suggests that while both central purchasing and materials management experience were required, the position of Purchasing Officer primarily involved central purchasing duties, thereby reinforcing the district court's decision the City provided legitimate, non-discriminatory reasons for its selection of Ms. Noonan over Mr. Vigil for the position of Purchasing Officer.

On appeal, Mr. Vigil also contends Ms. Noonan actually only served as an "Assistant Acting Purchasing Officer" and not the "Acting Purchasing Officer," and that nothing in the record shows he and Ms. Noonan acted in the position of Purchasing Officer for the same amount of time for comparison purposes. However, as the district court pointed out, the terminology referencing whether Ms. Noonan was the Acting Purchasing Officer or the Assistant Acting

Purchasing Officer is not material to the issue of comparative qualifications, given both candidates performed the duties of Purchasing Officer, regardless of what their temporary position was titled, and Mr. Vigil does not dispute the fact he often delegated his "acting" duties to Ms. Noonan. In addition, the district court explained that the record established both individuals served in the capacity of Acting Purchasing Officer for several days at various times, so in fact, they served in that capacity for the same or similar approximate periods of time for comparison purposes. (*Id.*) We find Mr. Vigil's unsupported contention to the contrary insufficient to show otherwise. For these reasons, together with the other reasons articulated by the district court which are not recounted here, we agree the City amply carried its burden of articulating legitimate, facially nondiscriminatory reasons for not promoting Mr. Vigil to the position of Purchasing Officer.

Having determined the City met its burden, we turn to Mr. Vigil's argument of pretextual discrimination in which he claims the district court overlooked his evidence of pretext. In support, he suggests the City eliminated certain exam and interview questions which were used when the position was open the year before and would have highlighted Ms. Noonan's absence of materials management experience. He argues that while the City is not prohibited from changing the interview process, it purposely changed its usual process in a manner that gave

-16-

"an unfair advantage to an unqualified candidate." Apt. Br. at 11. He suggests this evidence of pretextual discrimination is sufficient to overcome the City's argument it changed the questions to remove an unfair advantage to those who had previously applied for the position the year before. He also contends Ms. Doyle's affidavit demonstrates she gave highly visible, favorable assignments to Ms. Noonan, and then improperly based her promotion on the experience Ms. Noonan gained through those same assignments. Accordingly, he argues this is evidence of pretextual discrimination.

In addressing Mr. Vigil's assertions, the district court pointed out the City was obligated to offer a fair and level playing field to the candidates, which it did in providing the same questions to all the candidates, and that because the qualifications for the Purchasing Officer position changed between 2002 and 2003, it was reasonable to ask the 2003 candidates different questions than those asked of the 2002 candidates. We agree. Moreover, because Ms. Noonan obtained materials management experience while at the Water Department, we disagree with Mr. Vigil's unsupported premise that certain eliminated questions would have highlighted Ms. Noonan's absence of materials management experience.

As to Mr. Vigil's argument Ms. Doyle gave highly visible and favorable

-17-

assignments to Ms. Noonan which benefitted her for the purpose of promotion, the district court determined Ms. Doyle's favorable consideration of Ms. Noonan's availability and willingness to help was not improper and did not, standing alone, constitute discrimination. In addition, the district court pointed out it was undisputed Mr. Vigil spent eighty percent of his time at the City warehouse, was less available than Ms. Noonan, and did not step in to assist as readily as Ms. Noonan. We further note Ms. Doyle's favorable consideration of Ms. Noonan based on her availability and willingness to help was only one of many considerations which placed Ms. Noonan ahead of Mr. Vigil, thus weakening Mr. Vigil's argument that such favorable consideration alone showed pretext sufficient for a successful disparity claim.

In sum, under the circumstances presented, Mr. Vigil has not demonstrated pretext "by producing evidence of such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Jaramillo,* 427 F.3d at 1308. In addition, no "disparity in qualifications" exists that is sufficiently "'overwhelming'" for the purpose of showing pretext. *Id.* at 1309 (citation omitted). For these reasons and the additional reasons provided by the district court in its summary judgment

decision, we conclude Mr. Vigil clearly did not carry his burden of showing pretext with regard to the applied-for position.

C.  State Law Claims

On appeal, Mr. Vigil also asserts the district court erred in dismissing his breach of contract claim, covenant of good faith and fair dealing claim, and New Mexico Human Rights Act claim.  First, Mr. Vigil suggests the district court incorrectly found no material issues of fact exist with respect to his contract claim because "[Ms.] Noonan failed to meet [the] minimum qualifications" required. Apt. Br. at 13.  As a result, he contends "her promotion constituted a breach of contractual obligations" arising under the Merit Systems Ordinance.  *Id.*  In support of his claim, Mr. Vigil simply refers this court to personnel rules which generally require the City to select the best qualified candidates to fill vacant positions and that such selection be made "on the basis of education, experience, training, skills and other abilities."  Apt. Br. at 14-15, 19-20.

Next, Mr. Vigil suggests the district court erred, first in failing to specifically address his implied covenant of good faith and fair dealing claim, and then summarily dismissing it.  Last, in claiming the district court erred in dismissing his New Mexico Human Rights Act claim, he argues the City's proffered non-discriminatory reasons for promoting Ms. Noonan violated New

Mexico public policy, but he fails to explain exactly how such policy was violated.

In addressing Mr. Vigil's state claims, the district court found as a matter of law that Mr. Vigil was passed over for promotion on the basis of legitimate, nondiscriminatory reasons, and that he failed to raise a genuine issue of fact showing the City's reasons for promoting Ms. Noonan over him were pretextual. As a consequence, the district court concluded the City did not breach any contractual commitment[5] nor violate the New Mexico Human Rights Act.[6] We agree, and, like the district court, find no reason to discuss these issues further.

IV. Conclusion

For the reasons cited herein, as well as the reasons provided in the district court's August 25, 2005 Memorandum Opinion and Order Granting Defendants' Motion for Summary Judgment and September 26, 2005 Judgment, we **AFFIRM**

---

[5] Because the district court concluded Mr. Vigil's contract claim was subject to a summary judgment determination on these grounds, it did not address whether Ms. Doyle was a proper defendant, the alleged contract was express or implied, or Mr. Vigil exhausted his administrative remedies.

[6] Because the district court determined that, as a matter of law, neither Ms. Doyle nor the City violated the Act, it did not specifically address the issue of whether an individual such as Ms. Doyle was a proper defendant in a suit brought under the Act.

summary judgment in favor of the Defendants-Appellees. Each party shall bear the costs of litigation arising from this appeal.

**Entered by the Court:**

**WADE BRORBY**
United States Circuit Judge